W. DOUGLAS HENDERSON, Appellant, v. CAPE TRADING COMPANY, LEE GRANT and BARTON N. GRANT.

Division One, December 31, 1926.

1. **MALICIOUS PROSECUTION: Involuntary Bankruptcy: Attorneys: Pleading: Cause of Action.** A petition charging that "the allegations" set forth in a petition in a proceeding instituted by defendants to have the plaintiff declared a bankrupt "were false and known to be false by said petitioners and by defendants at the time, or might have been known to them to be false if they had used reasonable diligence to ascertain the facts in regard thereto," and sufficiently charging malice and want of probable cause, states a cause of action against all the defendants, and is not subject to the demurrer of those defendants who were the attorneys for the others in the bankruptcy proceeding, if it does not allege or disclose that they were such attorneys.

2. ———: **Gist of Action: Probable Cause: Malice.** The gist of the action for malicious prosecution is the existence of malice and the want of probable cause. Probable cause is a belief in the existence of the charge or facts alleged, based on sufficient circumstances reasonably to induce such belief in a person of ordinary prudence in the same situation; and if the facts are undisputed, it is the duty of the court to declare their legal effect and state whether or not want of probable cause exists. Malice is not an inference of law from a want of probable cause; but it may be inferred by the jury from facts which go to establish the want of probable cause.

3. ———: **Dismissal of Civil Suit.** In an action for malicious prosecution based on the institution of a civil action, a showing that defendants voluntarily dismissed such action, without evidence of other facts tending to show want of probable cause, does not relieve plaintiff of the burden of proof, and such dismissal does not alone make a case for the jury.

4. ———: **Liability of Attorney: Filing Petition in Bankruptcy: Upon Authority of Client.** If the relation of attorney and client is shown to exist, and it appears that the attorney, in instituting a proceeding, in the name of the client, to have the client's debtor declared to be a bankrupt, acted

upon authority given him by the client, solely in the interest of the client, and without knowledge of fraud, collusion or sinister intent to injure or deceive the debtor, the attorney is not liable to the debtor in a subsequent action for damages for malicious prosecution instituted against him by the debtor, except upon proof that he had actual knowledge that the charges contained in his petition in the bankruptcy proceeding were groundless; and in the absence of proof of such knowledge, and upon proof that he instituted the proceeding upon the authority given him by his client, and in good faith, and without fraud or collusion and without intent to injure the debtor, his demurrer to the evidence in the debtor's action of malicious prosecution should be sustained.

5. ———: ———: ———: ———: **Collection of Debt.** Authority given to an attorney by his client to collect a debt "by any legal means at your disposal" implies any suitable and appropriate proceeding to which resort is ordinarily made in the circumstances, and which in the judgment of the attorney is adapted to the case in hand; and while this general authority did not expressly authorize the attorney to institute a proceeding to have the debtor declared a bankrupt, it did become such express authority when the attorney advised that a petition in bankruptcy be filed at once and rhe client in writing replied that "we are willing to let you handle this case for us" and inclosed, in compliance with such advice, a signed proof of the claim; and though it later developed that the bankruptcy proceeding was not well grounded, the attorney is not liable in damages to the debtor for his mistaken judgment, where he acted in good faith and upon evidence of probable cause apparently reliable.

6. ———: ———: ———: **Probable Cause: Knowledge of Inaccuracy of Allegations.** There being no evidence that prior to the filing of the answer in the bankruptcy proceeding the attorneys for the petitioners therein, duly authorized to institute it, had any knowledge that any allegation in their petition therein was incorrect, and every allegation therein being based on facts indicating it was correct, there is a total failure of proof of the existence of a want of probable cause, and their demurrer to the evidence, in the action for malicious prosecution brought against them by the defendant in that proceeding, should be sustained.

7. ———: **Excessive Damages: New Trial: Remittitur.** The trial court has authority to grant a new trial in an action for malicious prosecution on the ground that the damages assessed by the verdict of the jury are excessive. And the trial court can grant defendant a new trial unless plaintiff remit a named part of the damages assessed.

Corpus Juris-Cyc. References: **Attorney and Client,** 6 C. J., Section 143, p. 637, n. 50; Section 146, p. 641, n. 86. **Malicious Prosecution,** 38 C. J., Section 26, p. 398, n. 26; p. 400, n. 28; Section 27, p. 400, n. 36; Section 31, p. 403, n. 51; Section 57, p. 418, n. 44; Section 59, p. 420, n. 67; Section 68, p. 425, n. 9; p. 426, n. 11; Section 112, p. 455, n. 29; Section 122, p. 460, n. 99; Section 148, p. 476, n. 94; Section 151, p. 478, n. 16; Section 152, p. 479, n. 23; Section 179, p. 491, n. 86; Section 189, p. 500, n. 79; Section 194, p. 504, n. 25. **New Trial,** 29 Cyc., p. 839, n. 91; p. 1022, n. 31.

Appeal from Circuit Court of City of St. Louis.—*Hon. George A. Mix,* Judge.

ORDER GRANTING NEW TRIAL AFFIRMED AND CAUSE REMANDED.

*Sanders, Forgcy & Verdier* and *Earl M. Pirkey* for appellant.

(1) The amount of damages in a case of malicious prosecution attended with publicity in the nature of libel is almost exclusively

left to the jury to determine. In cases of libel, slander or malicious prosecution the jury are almost unrestrained on the question of the amount of damages. Brown v. Knapp Co., 213 Mo. 696; Bowers v. Walker & Sawyer, 192 Mo. App. 243; Minter v. Bradstreet, 174 Mo. 447, syllabus 21. (2) Where a verdict is so large that it indicates that the jury were not governed by the facts and instructions, but were swayed by passion and prejudice, then the entire verdict should be set aside. In this case, the court did not find that situation, but attempted to substitute his idea of what the verdict should be for the finding of the jury. This he erred in doing.

*Robert T. Burch* and *Watts & Gentry* for respondents Lee W. Grant and Barton N. Grant.

(1) The order granting a new trial was right because, in fact, the verdict was very excessive, there being no evidence of any actual damages beyond a fee of $250 incurred for filing an answer in the bankruptcy case, while the jury awarded actual damages in the sum of $4,250. (a) There was nothing from which malice could be inferred, for there was no proof of want of probable cause, yet the jury assessed punitive damages in the sum of $4,000. Therefore, plaintiff having refused to remit any part of the verdict as directed by the court, the only proper thing to do was to order a new trial. Even if this court had any doubt as to the excessiveness of the verdict, it would defer to the action of the trial court, since it actually granted a new trial on that ground. Kelly v. Box Co., 248 S. W. 589; Morrell v. Lawrence, 203 Mo. 363, 381. (b) The constitutional provision regarding libel suits has no application to a suit for malicious prosecution. Even in libel suits this court has held that the right of trial courts and appellate courts to grant a new trial or order a *remittitur* exists in spite of such constitutional provision. Cook v. Globe Ptg. Co., 227 Mo. 542. (c) The right to order a *remittitur* in suits for malicious prosecution is universally recognized. Fire Assn. v. Fleming, 78 Ga. 333; Calef v. Thomas, 81 Ill. 478; Greenwell v. Ry. Co., 224 S. W. 410; Lowenthal v. Strong, 90 Ill. 74; McConnel v. Hampton, 12 Johns. 234; Walker v. Martin, 43 Ill. 508; Ruth v. St. Louis Transit Co., 98 Mo. App. 1; Farell v. Transit Co., 103 Mo. App. 458. (2) This court will uphold the action of the trial court if other reasons, aside from the amount of the verdict, why the new trial should have been granted, exist, no matter what this court finds as to the amount of the verdict. Benjamin v. Ry. Co., 245 Mo. 598. (3) The following reasons justify upholding the trial court's order granting a new trial: (a) The demurrer to the evidence should have been sustained, because plaintiff's petition did not state a cause of action against Grant & Grant, as attorneys at law. A statement in the alternative that they knew,

or might have known, the allegations in the petition in the bankruptcy case to be false if they had exercised reasonable diligence to ascertain the facts, is not sufficient as against them when they were attorneys for the petitioning creditors. Attorneys do not stand on the same footing as their clients in such matters. Peck v. Chouteau, 91 Mo. 138; Shull v. Boyd, 251 Mo. 479; Campbell v. Brown, 2 Woods, 349; Bocknell v. Dorian, 16 Pick. (Mass.) 478; Waugh v. Dibbens, 61 Okla. 221; Roth v. Shupp, 94 Md. 56; Ross v. Griffin, 53 Mich. 9; Wigg v. Simonton, 12 Rich. Law (S. C.) 583; Farmer v. Crosby, 43 Minn. 459; Stockley v. Harnidge, 34 Eng. C. L. R. 272; Burnap v. Marsh, 13 Ill. 535; Davies v. Jenkins, 11 Meeson & Welsby, 745. (b) The demurrer to the evidence should have been sustained because the evidence showed that the defendants, Grant & Grant, were attorneys at law, representing the Cape Company in the bankruptcy proceedings, and acting in good faith, and wholly failed to show actual knowledge on their part of the incorrectness of any allegation of the petition in the bankruptcy proceeding. See cases just cited. (c) The evidence wholly failed to show that the bankruptcy proceeding was instituted by these respondents as attorneys for the Cape Trading Company, without probable cause. Such proof was a necessary part of plaintiff's case, and the burden was upon him to make proof even as to clients, and doubly so as to attorneys in the case. Sappington v. Watson, 50 Mo. 83; Sharpe v. Johnston, 59 Mo. 557; Lindsay v. Bates, 223 Mo. 294; Hanna v. Life Ins. Co., 241 Mo. 402; Christian v. Hanna, 58 Mo. App. 37. Plaintiff showed by his own evidence that there was probable cause.

*Sanders, Forgey & Verdier* and *Earl M. Pirkey* for appellant in reply.

(1) The demurrer to the evidence should not be sustained either on the petition or on the facts. (2) The filing of a bankruptcy petition against a solvent man is a grievous wrong. McDonald v. Grocery Company, 184 Mo. App. 443. The petition charges that this was done and that the defendants did it and did it wrongfully and maliciously and not only filed it but wrongfully and maliciously prosecuted it. This states a cause of action against all defendants. (3) Respondents acted of their own motion and suggested the bankruptcy petition and proposed to file it without making a due investigation. Instead of the Cape Trading Company directing them to file the petition, the respondents wrote to Jules Chopak, the attorney for the Cape Trading Company and persuaded them to join in the bankruptcy proceedings, and the Cape Trading Company consented in reliance on respondents Grant. The Cape Trading Company is, of course, responsible for the acts of its agents and it is

especially responsible because after being advised of the situation by Henderson in November it permitted the prosecution to continue in its name until in January. Grant & Grant are liable and cannot shift the burden to their client for the reason that they were not depending on their client for directions and information; the situation was reversed and the Cape Trading Company depended entirely on them, and on them was the duty of hunting the facts and of acting in a lawful and proper manner.

ATWOOD, J.—Cape Trading Company and two other petitioners, by their attorneys, Grant & Grant, a firm composed of Lee W. Grant and Barton N. Grant, on November 6, 1920, instituted a proceeding to have W. Douglas Henderson, alleged to be doing business as Redding-Henderson Manufacturing Company, declared a bankrupt. On November 18, 1920, W. Douglas Henderson filed answer therein, denying the charge of bankruptcy and denying that he had any connection with Redding-Henderson Manufacturing Company. On January 14, 1921, the proceeding was dismissed by Grant & Grant as attorneys for the petitioners. Thereafter, on June 15, 1922, W. Douglas Henderson commenced the present action against respondents herein. In addition to formal allegations and a statement of the foregoing facts plaintiff's petition further charged:

"That the allegations and charges set forth in said petition in bankruptcy, hereinabove mentioned and set out, were false and known to be so by said petitioners and by defendants at the time, or might have been known to them to be false if they had exercised reasonable diligence to ascertain the facts with regard thereto, and that no ground existed for the filing of said petition and institution of said proceeding in bankruptcy; and that said petitioners, and the defendants herein, had no probable cause to believe that any of said allegations and charges were true; and said petition in bankruptcy was by defendants wilfully, intentionally, wrongfully and maliciously filed and presented, and said proceeding in bankruptcy was wilfully, intentionally, wrongfully and maliciously instituted and prosecuted by them, all in reckless disregard of plaintiff's lawful rights in the premises:

"That by reason of the acts of defendants in as aforesaid filing said petition and instituting and prosecuting said proceedings in bankruptcy against plaintiff, it became generally and publicly reported in the city of St. Louis, Missouri, where plaintiff resided and engaged in business, and in the vicinity of said city, as well as elsewhere, that plaintiff was insolvent and had committed an act of bankruptcy and that legal proceedings had been instituted to have him adjudged a bankrupt, that said report being widespread through the medium of newspapers and other means of propagation, and as the result thereof plaintiff lost and will lose part of his business

and his credit was greatly injured and impaired, and the transaction of his business greatly hampered and obstructed, and plaintiff sustained great mental suffering, embarrassment, humiliation and mortification, and became an object of common talk and condemnation, and plaintiff has been and will continue to be injured in his reputation as a business man, and plaintiff was compelled to defend against the said proceeding in bankruptcy and laid out and expended and became liable for counsel fees in the employment of counsel and other expenses attending said defense and he lost much time in which he was compelled to give to said proceedings and by reason of all the foregoing plaintiff has been damaged in the total sum of $10,000:

"That defendants knew or by the exercise of care commensurate with the circumstances would have known before they started said bankruptcy proceedings, that as aforesaid plaintiff was then and at all times prior thereto had been solvent and safe to deal with and financially responsible, and that the institution, and prosecution of said bankruptcy proceedings would probably cause the reports and consequences and results above set out which as set out above they did cause:

"That by reason of the said intentional, wilful, malicious and wrongful acts of defendants in filing said petition and instituting and prosecuting said proceedings in bankruptcy as aforesaid, as well as of their reckless disregard of the lawful rights of the plaintiff in the doing of said acts, plaintiff is entitled by way of punishment of the defendants to recover the sum of $10,000 as punitive damages."

Defendant Cape Trading Company stood on its first amended answer, alleging that in September, 1920, Redding-Henderson Manufacturing Company was indebted to this defendant in the sum of $807.20, and defendant referred this claim to Jules Chopak an attorney in the city of New York, for collection, who without the advice or authority of this defendant placed said claim in the hands of Grant & Grant, attorneys in St. Louis, Missouri, who without the knowledge, authority, consent or acquiescence of this defendant commenced said proceeding in bankruptcy against W. Douglas Henderson, joining this defendant as one of the petitioning creditors; that as soon as this defendant became aware of the said action of Grant & Grant it forthwith repudiated and denounced said action and at once instructed said Grant & Grant to dismiss said bankruptcy proceeding insofar as this defendant was concerned, and said proceeding was thereupon dismissed; and that this defendant was at no time actuated by any malice, prejudice or ill-will towards plaintiff.

The amended answer of defendants Lee W. Grant and Barton N. Grant states that whatever they did in connection with said proceeding in bankruptcy was done by them as duly- licensed, enrolled and practicing attorneys at law and by virtue of authority received

from their clients; that after said petition in bankruptcy was filed plaintiff herein waited until the time fixed by law for the filing of his answer thereto without communicating with them or in any way informing them that any of the allegations contained in said petition were incorrect, and that if plaintiff had so informed them they would have investigated his statements and if found to be true they would have procured the dismissal of said petition and saved plaintiff from any damage by reason thereof; that immediately after plaintiff filed his answer to said petition these defendants communicated with him and offered to have said petition dismissed, but plaintiff requested them to wait until he had consulted with his attorney, and that any delay which occurred in the dismissal of said petition was caused by reason of plaintiff's said request and similar requests made by plaintiff's attorney; that immediately after the filing of plaintiff's said answer these defendants informed him that if he would furnish them with the name of the bank or banks with which he did business and of any and all other persons or firms with which he had business relations, they would inform them of the facts concerning the filing of said petition and thus save plaintiff from any damage by reason thereof, but plaintiff refused to furnish said names.

Plaintiff's replies were general denials.

The case was tried to a jury, resulting in judgment for plaintiff and against all defendants for $4,250 actual damages and $4,000 punitive damages. Defendant Cape Trading Company and the Grant defendants filed separate motions for new trial, which were overruled on condition that plaintiff enter a *remittitur* of $7,250. Upon plaintiff's failure to enter such *remittitur* the trial court sustained defendants' motions for a new trial on the ground that the verdict was excessive, against which action of the court plaintiff lodged this appeal.

The attorneys for defendant Cape Trading Company, Inc., in the trial below subsequently withdrew from the case, and no other counsel appearing in its behalf we are without the benefit of any brief or suggestions for this respondent.

The first pleading filed by the Grant defendants was a motion to make plaintiff's petition more definite, and certain on the ground that it did not show in what capacity they were sued, whether as petitioning creditors or as attorneys representing the petitioning creditors.

**Demurrer to Petition.** Their motion was overruled, and they next demurred to plaintiff's petition on the ground that it failed to state facts sufficient to constitute a cause of action against them. Their demurrer was overruled, and at the commencement of the trial these defendants objected to the admission of any evidence in the case on the ground that plaintiff's petition failed to state a cause of action against them, which objection was overruled,

:and they now press their claim that the petition fails to state a
'cause of action against them.

These defendants saved no exception on failure of their motion to
make more definite and certain, nor do they urge reversible error in
the court's ruling thereon.   The petition generally and sufficiently
charged the existence of malice and want of probable cause in all
the defendants.   The petition also charged that certain allegations
in the bankruptcy petition "were false and known to be so by said
petitioners and by defendants at the time, or might have been known
to them to be false if they had exercised reasonable diligence to ascer-
tain the facts with regard thereto," etc.   Counsel for the Grant re-
spondents contend that this allegation states no cause of action against
them, because they only acted as attorneys for the petitioning credi-
tors in the bankruptcy proceeding.   But the petition before us does
not allege or disclose that the Grant defendants were such attorneys.
How then can it be said that the petition fails to state a cause of ac-
tion against them?   We think it does state a cause of action against
all of the defendants named.

The Grant respondents next urge that their demurrers to the evi-
dence should have been sustained, first, because the evidence showed
that they were attorneys acting in good faith as the representatives
of the Cape Trading Company, Inc., and other creditor petitioners
and had no actual knowledge of the incorrectness of
any allegation of the bankruptcy petition; and, sec-
ond, because the evidence failed to show that as to
these defendants the bankruptcy proceeding was instituted without
probable cause.   It is proper to consider such questions whenever and
wherever raised (Morrell v. Lawrence, 203 Mo. l. c. 370), and this
we shall proceed to do after stating some of the decided character-
istics of this kind of an action.

**Liability of Attorneys.**

The courts all agree that the gist of an action for malicious prose-
cution is the existence of malice and want of probable cause.   [Wil-
kinson v. McGee, 265 Mo. l. c. 582.]   Probable cause is "a belief
in the charge or facts alleged, based on sufficient circumstances to
reasonably induce such belief in a person of ordinary prudence in
the same situation."   [Boeger v. Langenberg, 97 Mo. l. c. 396-7.]
If the facts are undisputed it is the duty of the court to declare
their legal effect and state whether or not want of probable cause
exists.   Malice is not an inference of law from the want of probable
cause.   On the other hand, it need not be proved by direct and posi-
tive testimony, but may be inferred from the facts which go to estab-
lish the want of probable cause, although the jury should not be
instructed that such inference may be made unless the facts in ev-
idence are of a character to warrant such inference.   [Sharpe v.
Johnston, 59 Mo. l. c. 575-6.]   The burden is upon the plaintiff to

show the existence of both malice and want of probable cause. [Sappington v. Watson, 50 Mo. 83, 1. c. 84.]   A bare showing that defendants voluntarily dismissed the civil suit or prosecution complained of, without other facts in evidence tending to show the existence of want of probable cause, does not discharge plaintiff's burden of proof, and hence plaintiff makes no case for the jury upon such unsupported showing.   [Smith v. Burrus, 106 Mo. 1. c. 99; Eckerle v. Higgins, 159 Mo. App. 1. c. 190.]

Looking to the first ground stated, we should of course bear in mind that "the relation of attorney and client is a relation of agency, and, in its general features, is governed by the same rules which apply to other agencies."   [Mechem on Agency (2 Ed.) sec. 2150.]   The same authority (Sec. 1452) holds that agency is usually no defense in tort cases.   In fact, it is sometimes said that "in torts the relation of principal and agent does not exist.   They are all wrongdoers and the liability of each and all does not cease until payment has been made or satisfaction rendered or something equivalent thereto."   [Berghoff v. McDonald, 87 Ind. 549; Carraher v. Allen, 112 Iowa, 168.]   While this statement is declaratory of a more or less general principle, it undoubtedly requires some qualification.

For instance, in Mechem on Agency (2 Ed.) sec. 2219, it is said: "An attorney at law, who acts in good faith and is prompted only by professional duty and fidelity to his client, is not liable to the other party for injuries which the latter may sustain from the fact that the action was begun or prosecuted, by the attorney's client, either maliciously or without probable cause.   The wrong intentions of the client are not to be imputed to his attorney who was ignorant of them, and who, himself, had no such intentions.   This rule is absolutely imperative for the attorney's protection.   He can rely in the first instance only upon the advice and instructions of his client, and it would impose upon the attorney a perilous responsibility if he could justify his participation in the suit only by its result."

Ibid.   Section 2220:   "In order, however, to render the attorney liable for a malicious prosecution by his client, it must not only appear that the attorney knew that the prosecution was malicious, but that he also knew that it was without cause.   It is not enough that he might, with reasonable diligence, have ascertained that there was no probable cause for the prosecution.   The attorney has a right, in good faith, to advise and act upon the facts which he gets from his client, and it is not his duty to go elsewhere for information."

Also, in 18 Ruling Case Law, page 63, the same doctrine is thus stated:   "An attorney is not ordinarily liable for the acts of his client, and the fact that through ignorance he gives his client bad advice, on which he acts to the hurt of another, will not make the attorney liable to that other.   .   .   .   As regards the question of

probable cause, the attorney may act upon the statement of facts made to him by his client, and is not under a duty to institute an inquiry for the purpose of verifying his statement before giving advice thereon.''

The foregoing statements of the law clearly rest on circumstances where the client assumes to dictate a prosecution on his own responsibility, and the attorney acts upon the statement of facts made to him by his client. Both cite Peck v. Chouteau, 91 Mo. 138, as a supporting case, and it is much relied upon by the Grant respondents, but when we there said that ''nothing short of complete knowledge on the part of the attorney, that the action is groundless, and that the client is acting solely through illegal or malicious motives, should make him liable in these actions'' such circumstances were under consideration.

More nearly in point, because the attorneys and not the client obtained the information acted upon, is the case of Campbell v. Brown, 2 Woods, l. c. 350, where Justice BRADLEY, sitting in the United States Circuit Court for Texas, said: ''It is a general rule that attorneys-at-law, in the exercise of their proper functions as such, are not liable for their acts when performed in good faith and for the honest purpose of protecting the interests of their clients. The public interest demands this. . . . It is as necessary to the public weal that they should be privileged from molestation by actions and suits in the courageous performance of their duty as it is that the representatives of the people in the legislature or the judges of the courts should be thus privileged.'' This was an action to recover *mesne* profits from attorneys who, acting for their client, had been put in possession of land under judicial process and continued to exercise a general superintendence for their non-resident client pending litigation which terminated adversely to their client while acting under their advice and direction. The question was, did they go outside of the line of their duty? Held, that they did not, and were not liable, although there was no question as to the liability of their client.

Bicknell v. Dorion, 16 Pick. (Mass.) 478, was an action against client and attorneys for malicious prosecution, and the court said (l. c. 490) : ''But we think in general it is true, that an action cannot be maintained against an attorney, on the ground of his instrumentality in bringing a civil action, against the plaintiff, unless where he has commenced such suit, without the authority of the party in whose name he sues, or, unless there be a conspiracy to bring a groundless suit, knowing and understanding it to be groundless, and without any intent or expectation of maintaining the suit.''

Waugh v. Dibbens, 61 Okla. 221; Roth v. Shupp, 94 Md. 56; and Ross v. Griffin, 53 Mich. 9, were actions against attorneys and clients for false imprisonment, and the attorneys were held not liable for

their acts pertinent to the matter in question and performed in good faith in the interest of their clients.

In Burnap v. Marsh, 13 Ill. 535, an action for malicious prosecution commenced against defendants as attorneys for suing out a writ of *ne exeat* and causing the arrest of plaintiff, the rule is thus stated (l. c. 538): "It is not denied that in order to render the attorneys liable for suing out a writ and causing the plaintiff to be arrested thereon, something more must be shown than would be required were the action brought against the party in whose behalf the writ was sued out. The rule by which attorneys may be held liable for malicious prosecutions is clearly laid down by TINDAL, C. J., in Stockley v. Harnidge, 34 Eng. C. L. R. 276. It was there held, that if the attorneys who commenced the suit alleged to be malicious, knew that there was no cause of action, and knowing this, 'dishonestly and with some sinister view, for some purpose of their own, or for some other ill purpose which the law calls malicious, caused the plaintiff to be arrested and imprisoned,' they were liable. To protect attorneys beyond this, would be authorizing those who are the most capable of mischief to commit the grossest wrong and oppression."

Judge LAMM doubtless had the above line of cases in mind when, in an action against an attorney for false imprisonment, Shull v. Boyd, 251 Mo. l. c. 479, he said: "That something is due to the office and function of an attorney moving in the usual professional orbit, so long as those functions are performed in good faith and have the honest purpose of protecting the interests of his client, is an accepted doctrine of the law, applicable here."

We conclude from the foregoing and such other authorities as we have been able to examine that whether the defendants in a malicious prosecution suit be attorneys or others, the pivotal question is, did they proceed without probable cause? But, as the court said in Burnap v. Marsh, 13 Ill. l. c. 539-540: "It may be true, that evidence which would be sufficient to show a want of probable cause for the client, would not establish the same thing as to the attorneys." A fair statement of the law applicable to this phase of the case seems to be that if the existence of the relation of attorney and client is shown, and it appears that the attorney has acted with the authority of his client, solely in the interest of his client, and without knowledge of fraud, collusion or sinister intent to injure or deceive a third party, he should not be held liable to such third party in an action for malicious prosecution except upon proof of his actual knowledge that the charge was groundless.

In the record before us there is not the slightest suggestion that the Grant defendants were guilty of fraud or collusion, or that they entertained any sinister intent to injure plaintiff, nor do we find from the evidence that they acted without authority in the bankruptcy

proceeding. The relation of attorney and client was clearly shown to exist between them and the Cape Trading Company, Inc., at the time the petition in bankruptcy was filed on November 6, 1920. Attorney Chopak, to whom the Cape Trading Company first entrusted this claim against Redding-Henderson Manufacturing Company, testified that he acted as its agent in transferring the claim to Grant & Grant, and delivered to said Cape Trading Company all letters received by him from Grant & Grant. In transmitting the claim he wrote them under date of September 23, 1920, as follows: "My client wishes to collect the amount of the debt in full, if possible, by any legal means at your disposal. Kindly recommend what action you desire to take to effect the result." This character of employment is thus construed in Section 2168, Mechem on Agency (2 Ed.): "If collection by legal process should be deemed authorized, this would doubtless be properly held to mean any suitable and appropriate process ordinarily resorted to in such cases, and which in the judgment of the attorney was adapted to the case at hand."

Futhermore, under date of October 6th, Messrs. Grant & Grant wrote Mr. Chopak that their commercial agency report showed "that Mr. Henderson has about $10,000 working capital," etc., advised that petition in bankruptcy be filed at once, and inquired whether or not the Cape Trading Company, Inc., was willing to join as a petitioning creditor. The evidence shows that this letter was promptly transmitted to the Cape Trading Company, Inc., and on October 11, 1920, it wrote Grant & Grant acknowledging receipt thereof and containing the statement, "We are willing to let you handle this account for us." Grant & Grant wrote Chopak under date of November 9, 1920, advising him that an involuntary petition in bankruptcy had been filed on the previous Saturday, and proof of claim and power of attorney was enclosed with the request that it be returned to them "properly executed so that client's claim may be duly filed with the referee." In prompt compliance therewith the Cape Trading Company, Inc., wrote Grant & Grant under date of November 12, 1920, enclosing signed proof of claim. We think it clearly appears from the evidence that Grant & Grant advised their client, the Cape Trading Company, Inc., that a bankruptcy proceeding should be instituted in which Henderson would be a party defendant, and that they were authorized by the Cape Trading Company, Inc., to act as its attorneys in such proceeding.

On the issue of want of probable cause plaintiff's evidence showed that on November 6, 1920, an involuntary petition for adjudication in bankruptcy was filed in the United States District Court, Eastern Division of the Eastern Judicial District of Missouri, against W. Douglas Henderson, doing business as Redding-Henderson Manufacturing Company, alleged bankrupt, by Lee W. & Barton N. Grant,

attorneys for Cape Trading Company, Incorporated, and other petitioning creditors; that on November 18, 1920, W. Douglas Henderson filed denial of insolvency and any connection with the Redding-Henderson Manufacturing Company, and that on January 14, 1921, on motion of attorneys for petitioning creditors, the petition was dismissed; that in the latter part of November, 1920, Barton N. Grant called upon plaintiff at his office, told him that he had been made a party defendant in the bankruptcy proceeding by mistake and offered to notify his creditors and the banks with which he did business of the mistake; that plaintiff told him that he would like for him to notify these parties and dismiss the suit, but plaintiff did not give him the names of his creditors or the banks with which he did business, and when Mr. Grant began to question him about the affairs of the Redding-Henderson Manufacturing Company and how he retired from that concern plaintiff told him to get his information from Sanders, Forgey & Verdier. Plaintiff also testified that in this conversation Grant told him that in preparing the bankruptcy petition he depended upon a commercial report for his information, and that it was an old report. There is no evidence, however, that Grant knew or had any reason to believe at the time he prepared and filed the bankruptcy petition that the report was an old one, or when he discovered this fact. A circular letter issued by Sanders, Forgey & Verdier under date of September 17, 1920, marked "copy to all clients," relating to an assignment made by the Redding-Henderson Manufacturing Company for the benefit of creditors and reciting that the "concern was owned by Mr. Chas. J. Redding" was admitted in evidence, but it does not appear that the Grant defendants had any knowledge or notice of its contents. Mr. Sanders, of the law firm of Sanders, Forgey & Verdier, testifying for plaintiff, said that within two or three days, maybe within the next day, after he filed answer for Mr. Henderson in the bankruptcy proceeding, Mr. Barton N. Grant called him stating that he had filed the bankruptcy petition on information had from a commercial report and agreed to dismiss the proceeding; that thereafter as attorney for Henderson he had the bankruptcy matter set down and referred, and that he had barely done this when Mr. Barton N. Grant dismissed the petition.

While the Grant defendants did not stand on their demurrer to plaintiff's evidence, yet the evidence introduced in their behalf did not aid plaintiff's case. There is no evidence that prior to the filing of Henderson's answer on November 18, 1920, these defendants had any knowledge that any allegation of the bankruptcy petition was incorrect, and upon the whole record plaintiff failed to make a case for the jury as against these defendants in any capacity upon the issue of want of probable cause. These defendants' demurrer to the

evidence is good upon both of the grounds above urged and should have been sustained.

Our action in thus considering points urged by these respondents as supporting the court's order granting a new trial, though not mentioned therein, accords with sound precedent (Benjamin v. Railroad, 245 Mo. 1. c. 610), but most of our conclusions have no application to respondent Cape Trading Company, and it remains for us to consider the trial court's own assignment that the verdict was excessive.

Appellant contends that the trial court erred in holding that the verdict was excessive and in granting a new trial on that ground. He lays down the proposition that "in cases of libel, slander or malicious prosecution the jury are almost unrestrained on the question of the amount of damages," and cites the two libel cases of Brown v. Knapp & Co., 213 Mo. 655; and Minter v. Bradstreet, 174 Mo. 447.

In the former case where the defamatory words were libelous *per se* we said (1. c. 697) : "The question of damages for a tort, especially in a case of libel or slander, is peculiarly within the province of the jury, and unless the damages are so unconscionable as to impress the court with its injustice and thereby to induce the court to believe that the jury was actuated by prejudice, partiality or corruption it rarely interferes with the verdict."

However, the propriety of such action, even in libel suits, has since been well established in Cook v. Globe Printing Co., 227 Mo. 1. *c.* 551, and as far as we know the position there taken is still the ruling precedent. But the present suit is for malicious prosecution, and not for libel, and the right of the court to grant defendant a new trial in a malicious prosecution suit conditioned upon compliance with an order of *remittitur* has long been recognized in the State. [Ruth v. St. Louis Transit Co., 98 Mo. App. 1. c. 20.] Unless it is clear that the trial court abused its discretion in such cases we are not inclined to disturb the order. [Farrell v. St. Louis Transit Co., 103 Mo. App. 1. c. 457, and numerous cases cited.] We find nothing in this exercise of the court's discretion that calls for our interference.

The judgment is affirmed and the case remanded for a new trial not inconsistent herewith.

All concur, except *Graves, J.,* absent.