ROBERT J. PROKOP, M.D., APPELLANT, V.
MARTIN A. CANNON, SR., ET AL., APPELLEES.
583 N.W. 2d 51

Filed July 14, 1998. No. A-97-615.

Robert J. Prokop, pro se.

Michael M. O'Brien, P.C., for appellees.

Miller-Lerman, Chief Judge, and Sievers and Mues, Judges.

Sievers, Judge.

## INTRODUCTION

Robert J. Prokop, M.D., appeals the dismissal of his third amended petition with prejudice after the district court for Saline County, Nebraska, sustained the defendants' demurrer.

## BACKGROUND

A number of years ago, Nancy Hoch and Prokop were opposing candidates for the elected position of University of Nebraska regent in the 1988 general election. During the campaign, Prokop authored a flier criticizing Hoch's record and mailed it to approximately 40,000 households. Hoch requested a retraction, which was not forthcoming. Hoch then filed suit in the district court for Saline County, alleging that the flier contained 13 separate instances of libel. Hoch was represented at different phases of the lawsuit by Martin A. Cannon, Sr., and Michael M. O'Brien of Cannon, Goodman, O'Brien & Grant, P.C.—all of whom are the defendants in the instant action. For convenience, we will refer to them collectively as "Hoch's attorneys." Prokop's answer asserted that the petition failed to state a cause of action. But rather than demurring on this basis, Prokop filed a motion for summary judgment. The district court granted summary judgment to Prokop as to 12 of the 13 allegations. As to the 13th allegation of libel, the district court ordered that the case proceed to trial. Hoch withdrew the 13th allegation and appealed the entry of summary judgment to the Nebraska Supreme Court.

In *Hoch v. Prokop*, 244 Neb. 443, 449, 507 N.W.2d 626, 631 (1993), the Nebraska Supreme Court held that the district court committed plain error by "not treating the summary judgment as a demurrer, by not ruling that Hoch had failed to state a cause of action, and by not allowing Hoch to amend her petition." The judgment of the district court was reversed, and the cause was remanded with directions. After approximately 7 years of pretrial motions and amended petitions, on October 10, 1995, 2 days before the scheduled trial, Hoch dismissed the suit

against Prokop with prejudice. That day, the Omaha World-Herald ran a story about the lawsuit in which one of Hoch's attorneys, O'Brien, was quoted as saying that his client had dropped the suit because she had been able to stop Prokop's libelous remarks. The article went on to quote counsel as having said: " 'Once the libelous material was not being published, we accomplished our purpose . . . . She wanted to put a check in Dr. Prokop's apparent unbridled liberty to say whatever he felt like. . . .' "

Prokop sued Hoch's attorneys on October 10, 1996, in the district court for Saline County. The petition was prepared pro se and alleged that Hoch's previous lawsuit against Prokop contained slander and libel. Prokop further alleged that Hoch's attorneys "maliciously and with knowledge of the falsity of their allegations [by their client] represented in Hoch vs. Prokop, and with a reckless disregard for the truth, continued litigation for the purpose of malicious prosecution of the Plaintiff, Robert J. Prokop, M.D." Prokop requested $5 million in "specific damages" for malicious prosecution and slander and libel and also asked for general damages as provided by law. Hoch's attorneys demurred, asserting that several causes of action were improperly joined and that the petition failed to state facts sufficient to constitute a cause of action.

On November 27, 1996, Prokop filed a motion for summary judgment, which stated: "This Motion is based upon Defendant's Answer which fails to deny any of the Plaintiff's allegations." While this statement is technically correct because Hoch's attorneys did not file an answer, it is of no consequence because they demurred to the petition. The trial court sustained the demurrer on December 12, 1996, and gave Prokop leave to amend his petition. That same day, Prokop filed his amended petition, which was identical to the original petition. Hoch's attorneys demurred again. The trial court ruled against Prokop on January 16, 1997, reasoning that the plaintiff pled no facts which the defendants knew were untrue and that there was no allegation of facts showing that the lawsuit filed by Hoch's attorneys lacked "probable cause." The court said, "I do not know just what Plaintiff is getting at other than they gave up." (We take that as a reference to Hoch's dismissal of her lawsuit.)

Additionally, the district court relied on the Supreme Court's ruling and remand in *Hoch, supra,* to conclude that Hoch's lawsuit was not "frivolous," as well as to show that the case was not maliciously prosecuted. Thus, the trial court sustained the demurrer and gave Prokop 60 days to amend his petition. Prokop filed a second amended petition of 18 pages on March 10, 1997. Hoch's attorneys once again demurred, which was sustained. Prokop filed his third amended petition on May 5. Hoch's attorneys demurred 2 days later. On June 2, the trial court ruled:

> Section 25-804, R.R.S. 1995, requires that a petition contain "a statement of facts constituting the cause of action, in ordinary and concise language, and without repetition. . . ." The pleadings also show that Plaintiff is a medical doctor and this court assumes that he has the resources to obtain skilled help and advice. It is time for an appellate court to consider these pleadings because Plaintiff, on his own, will be unable to satisfy the trial court. The court does not want to risk a reversal on summary judgment because a defective demmurrer [sic] is in place and all parties be [sic] caused to expend further resources and time thereafter. It is hereby ordered that Defendants' demmurrer [sic] be and hereby is granted and that no additional time for a fourth amended petition be granted on behalf of Plaintiff. The granting of the demurrer dismisses the case.

Prokop then appealed to this court.

## ASSIGNMENTS OF ERROR

Prokop argues that the district court erred (1) in not allowing him the opportunity to amend his petition and cure the defect, (2) in "granting summary judgment challenging petition sufficiency [sic] on the basis it lacked a cause of action," and (3) in forcing him to appeal based solely on the fact that he "could not satisfy the trial court under any circumstances." Prokop also argues, "Judicial error is evident by judicial comments made throughout the trial docket sheet."

## STANDARD OF REVIEW

When reviewing an order sustaining a demurrer, an appellate court accepts the truth of the facts which are well pled, together

with the proper and reasonable inferences of law and fact which may be drawn therefrom, but does not accept as true the pleader's conclusions. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998).

## ANALYSIS
*Allegations of Slander and Libel.*

In considering a demurrer, a court must assume that the facts pled, as distinguished from legal conclusions, are true as alleged and must give the pleading the benefit of any reasonable inference from the facts alleged, but cannot assume the existence of facts not alleged, make factual findings to aid the pleading, or consider evidence which might be adduced at trial. *Lawry v. County of Sarpy*, 254 Neb. 193, 575 N.W.2d 605 (1998). In considering the appellees' demurrer, we limit our analysis to Prokop's third amended petition (petition). Prokop appears to have three theories of recovery in mind in his pleading. See *P. R. Halligan Post 163 v. Schultz*, 212 Neb. 329, 322 N.W.2d 657 (1982) (two purported causes of action arising out of same factual circumstances and involving same parties were not causes of action but, instead, different theories of recovery). Prokop's claims are apparently slander and libel (defamation), malicious prosecution, and "frivolous pleadings," although he does not separately state or number them as he should. But despite the imprecise and often confusing nature of Prokop's petition, we bear in mind that in determining whether a cause of action has been stated, a petition is to be liberally construed. *Coburn v. Reiser*, 254 Neb. 495, 577 N.W.2d 289 (1998).

In *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993), the plaintiff, Hoch, was held to be a public figure. As Hoch's opponent for the office of regent, Prokop at all times material to this case was also a public figure. Moreover, the comments in Prokop's flier discussing Hoch's qualifications were held in *Hoch* to be matters of public concern. When an allegedly defamatory speech involves a public figure and the speech is a matter of public concern, then the plaintiff must surmount higher barriers than those present in simple common-law libel because of the First Amendment. *Hoch, supra.*

The "higher barriers" were delineated in *Hoch*, 244 Neb. at 445, 507 N.W.2d at 629. Prokop, because he was a pub-

lic figure when he was sued by Hoch—which lawsuit was the seed from which this protracted case grew—must demonstrate in this lawsuit actual malice by Hoch's attorneys. Malice in a public-figure libel case means knowledge of falsity or reckless disregard for the truth. See *Hoch, supra,* citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S. Ct. 710, 11 L. Ed. 2d 686 (1964). Because of this particular burden of proof in a public-libel case, Prokop's petition must allege facts, not merely naked conclusions, showing that Hoch's attorneys, in the filing and conduct of her lawsuit, acted with knowledge of falsity or reckless disregard for the truth. See *Hoch, supra.* The burden of proof for falsity in a public-libel case is by clear and convincing evidence. *Id.*

To summarize, Hoch claimed Prokop libeled her in his campaign flier, and now Prokop claims Hoch's attorneys libeled him when they filed suit against him on Hoch's behalf, alleging that the flier was defamatory. While we may seem to be going in circles, the analysis is necessarily circular. The subject of Hoch's qualifications for the office of regent, an issue in the original action, is still very much "on the table," because the "falsity" of what Prokop published in his flier is still an issue in this action. The end result is that Prokop, as the plaintiff in this case, must allege and prove the truth of his flier in order to prove the falsity of the allegations underlying the lawsuit filed against him by Hoch's attorneys. Consequently, Hoch's qualifications remain at the core of this case and remain, at least for purposes of our analysis, a matter of public concern. In saying this, we recognize the reality that the vast majority of the public probably does not care about what Hoch's qualifications were for a public office in an election 10 years ago. Nonetheless, we must engage in the analytical fiction that this litigation is in the same relative timeframe as the 1988 election. In other words, the mere passage of time (and a lot of it) does not lower the barriers for what is, and will always be, a public-libel case. Consequently, Prokop must allege and prove the falsity of the original suit against him. We now turn our focus to the particular consequences engendered by the fact that the defendants here are Hoch's attorneys.

It is a well-established rule that libelous matter in a pleading which is relevant to, or has some reasonable relation

to, the judicial proceeding in which it is filed is absolutely privileged. *Beckenhauer v. Predoehl*, 215 Neb. 347, 338 N.W.2d 618 (1983). This absolute privilege attaches to all statements, even allegedly defamatory statements, made by an attorney incident to and in the course of a judicial proceeding, if the statements have some relation to the proceedings. *Cummings v. Kirby*, 216 Neb. 314, 343 N.W.2d 747 (1984).

*Beckenhauer, supra*, was an action for damages for libel contained in a notice of disallowance of claim filed in proceedings to administer the estate of Herman Melcher, deceased. The defendant, Melvin Predoehl, was the personal representative of Melcher's estate. Charles Beckenhauer, an attorney who had previously represented the deceased in some legal matters, notified Lauree Cutsor, Melcher's sister, of Melcher's death and assisted in making arrangements for the funeral. He also talked to Cutsor on several occasions but was not employed to commence proceedings to administer the estate.

After estate administration proceedings had been commenced, Beckenhauer filed a claim for legal services and expenses rendered to the estate. A notice of disallowance of claim, prepared by counsel and signed by Predoehl and Cutsor, was filed in the estate proceeding. A statement was added to the bottom of the form by Predoehl, which read in pertinent part:

"The family of Herman A. Melcher, deceased, are in total agreement and state that at no time did any of said family or relatives of the decedent hire or retain Mr. Beckenhauer . . . as their lawyer or as the lawyer for this estate. . . .

". . . [O]ther attorneys in Cuming County wanted this estate inorder [sic] to indirectly steal from this estate—if not directly.

"The Melcher family are certain that the attorneys prior acted improperly, if not unethically. . . .

"The Beckenhauer law firm have been overly paid for their work in abstracting and land contracts in the eyes of the Melcher family. . . ."

*Beckenhauer*, 215 Neb. at 348-49, 338 N.W.2d at 620.

Beckenhauer sued Predoehl for libel based on the above statements. At the close of Beckenhauer's evidence, the trial court dismissed his petition on the ground that Predoehl's state-

ments were privileged. The principal issue on appeal was whether the defamatory material included in the notice of disallowance was relevant or pertinent to the claim filed, because " '[a]llegations in pleadings are privileged *if material or pertinent to the controversy in litigation. . . .*' " (Emphasis supplied.) *Id.* at 350, 338 N.W.2d at 620. The Nebraska Supreme Court concluded:

> It should be apparent to all that the statement was wholly unnecessary to the notice of disallowance of claim and served only to defame members of the bar in Cuming County, Nebraska. . . .
>
> The Restatement [(Second) of Torts] makes it clear that the defamatory matter need not be relevant to any issue before the court, but is privileged if it has some reference to the judicial function the judge is performing. If the defamatory matter has some reference to the subject matter of the litigation, it is privileged.

*Id.* at 350-51, 338 N.W.2d at 621.

■ The *Beckenhauer* court concluded that the defamatory material contained in the notice of disallowance was privileged. Restatement (Second) of Torts § 586 at 247 (1977) provides:

> An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding.

We conclude that insofar as Prokop's petition alleges slander and libel against Hoch's attorneys based on pleadings from *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993), the demurrer was correctly sustained. In his numerous petitions, Prokop has alleged nothing to indicate that what Hoch's attorneys did or said in the filing of the original lawsuit was not within the *Beckenhauer* privilege.

■ Furthermore, we conclude that "releases made to the news media by the defendants and co-counsels" were also privileged as communications made as part of a judicial proceeding in which Hoch's attorneys participated as counsel. Although Prokop's petition fails to allege the precise "slanderous and

libelous statements" made by the appellees to the news media, the initial petition, through attachments of newspaper articles, reveals that O'Brien, in his capacity as Hoch's attorney after the dismissal of her lawsuit against Prokop, was quoted by the media as having said: " 'Once the libelous material was not being published, we accomplished our purpose . . . . She wanted to put a check in Dr. Prokop's apparent unbridled liberty to say whatever he felt like. . . .' " Susan Szalewski, *Ex-Regent Hoch Drops 7-Year-Old Lawsuit Against Dr. Prokop*, Omaha World-Herald, Oct. 10, 1995. True or not, we find that the statements made to the news media were well within the privilege. The Restatement, *supra*, comment *c*. at 248, in part, clearly supports our conclusion:

> The privilege stated in this Section is confined to statements made by an attorney while performing his function as such. Therefore it is available only when the defamatory matter has some reference to the subject matter of the proposed or pending litigation, although it need not be strictly relevant to any issue involved in it. Thus the fact that the defamatory publication is an unwarranted inference from the evidence is not enough to deprive the attorney of his privilege.

The demurrer with reference to slander/libel on the basis of statements made to the news media was also correctly sustained.

After a demurrer is sustained, leave to amend is to be given, unless it is clear that no reasonable possibility exists that the plaintiff will be able to correct the deficiency. *Rice v. Adam*, 254 Neb. 219, 575 N.W.2d 399 (1998). Here, the trial court did not make an express finding that there was no "reasonable possibility" that Prokop could correct the defects in his petition. Instead, the court found, "It is time for an appellate court to consider these pleadings because Plaintiff, on his own, will be unable to satisfy the trial court." While not a precise statement of the applicable standard, we take the trial judge's comment as tantamount to a finding that there was no reasonable possibility that Prokop could cure the defect in his petition. We agree that no reasonable possibility exists that Prokop will be able to state a cause of action against Hoch's attorneys for defamation because the statements in the pleadings and to the press were

privileged, as they all clearly related to the conduct of the litigation. Accordingly, the trial court correctly sustained the demurrer to Prokop's claim for slander/libel without leave to amend. Thus, we affirm the dismissal of the defamation claims against Hoch's attorneys.

*Malicious Prosecution.*

Prokop's petition also contains a conclusionary allegation against Hoch's attorneys that the case *Hoch, supra,* constituted malicious prosecution. In a malicious prosecution case, the necessary elements for the plaintiff to establish are: (1) the commencement or prosecution of the proceeding against him or her; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damages. *Johnson v. First Nat. Bank & Trust Co.,* 207 Neb. 521, 300 N.W.2d 10 (1980). Hoch's attorneys contend that Prokop cannot satisfy the second element of malicious prosecution because "Appellees/Defendants did not cause a civil or criminal proceeding to be filed against Appellant/ Plaintiff." Brief for appellee at 5. There is no question that the original proceeding was instituted against Prokop by Hoch, but the law is that in certain situations, the litigant's attorney can be sued for malicious prosecution.

The appellate courts of Nebraska have never discussed malicious prosecution with reference to a lawsuit filed against an attorney who filed a previous action on behalf of a client. We believe that there are policy considerations involved in determining the extent to which attorneys who file suit on behalf of their clients can later be sued. Broadly considered, those reasons are similar to reasons previously discussed herein with respect to defamation actions against lawyers. As expressed by the Court of Appeals of Louisiana:

> [T]he notion that defendant as the attorney for the party in the malpractice case was guilty of malicious prosecution seems to distort the role of an attorney in any case. The suit was filed by the attorney only in a technical sense since he may have signed the petition, but it was in fact an action instigated and carried on by the plaintiff . . . .

[H]is attorney, defendant herein, was simply the instrument through which he [the plaintiff] invoked the judicial determination . . . .

*Spencer v. Burglass*, 337 So. 2d 596, 600 (La. App. 1976). In *Brody v. Ruby*, 267 N.W.2d 902, 906 (Iowa 1978), the Iowa Supreme Court held that before a lawyer who had filed a medical malpractice action against a doctor could be sued for malicious prosecution by the doctor, there had to be a "special injury," i.e., something beyond that which necessarily results from similar suits. The basis for the court's ruling in *Brody, supra*, was that courts should be open to all who think they have a just cause without the deterrence which would result from counteractions based on malice if the original plaintiff was not successful. The *Brody* court wisely noted that when disputes reach the litigation stage, some malice is present on both sides as " '[f]riendly tort suits' " are not common. *Id.* at 905. Nonetheless, our examination of the law leads us to the conclusion that there is not an absolute bar against malicious prosecution actions against attorneys.

 It is clear that an action for malicious prosecution can be brought when the underlying action is a civil action. See *Leisy v. Lisco State Bank*, 223 Neb. 946, 395 N.W.2d 517 (1986) (action for malicious prosecution brought as cross-petition in suit for conversion). The absence of probable cause is an essential and indispensable element of an action for the malicious prosecution of a civil or criminal action. *Brumbaugh v. Frontier Refining Co.*, 173 Neb. 375, 113 N.W.2d 497 (1962). Here, the trial court suggested in one of its rulings that the reversal and remand of the underlying case of *Hoch v. Prokop*, 244 Neb. 443, 507 N.W.2d 626 (1993), establishes that there was "probable cause" for the filing of that lawsuit. This, in turn, implies the trial court's conclusion that Prokop could never satisfy the need to plead and prove an absence of probable cause under his theory of malicious prosecution. However, we disagree with this interpretation, because the Supreme Court did not address whether there was probable cause for the filing of the lawsuit in *Hoch*. Instead, using the standards for a demurrer, the court simply found that the facts which Hoch alleged "begin to establish a libel cause of action." *Id.* at 449, 507 N.W.2d at

631. Thus, the matter was remanded to see if Hoch could allege the additional facts which were missing, because there was nothing on the face of the pleading to suggest that she could not allege such facts.

Generally, an attorney is not liable in an action for malicious prosecution where he or she has acted in good faith in the prosecution of the client's rights; however, such a suit can be brought against an attorney because an attorney cannot always justify his or her actions merely by showing he or she followed the client's instructions. 54 C.J.S. *Malicious Prosecution* § 61 (1987). If an attorney, knowing that there is no cause of action, dishonestly and for some improper purpose files suit, or if an attorney acts knowing that the client has no just claim and that the client is actuated by an illegal or malicious motive, then a cause of action for malicious prosecution exists against the attorney. *Id.* A cause of action exists if an attorney prosecutes a claim which a reasonable lawyer would not regard as tenable or proceeds with the action by unreasonably neglecting to investigate the facts and the law. *Id.*

Apart from and in addition to the above general observations, there is authority for the proposition that attorneys may be liable in "exceptional circumstances" for their actions in connection with the representation of a client. In *Macke Laundry Serv. Ltd. v. Jetz Serv. Co.*, 931 S.W.2d 166 (Mo. App. 1996), the court articulated these exceptional circumstances as when the attorney is guilty of fraud, collusion, or a malicious or tortious act, meaning an intentional tort. While Nebraska has not expressly adopted this rule, the often-repeated need for pleading and proving probable cause in a malicious prosecution action seems to fit hand in glove with the Missouri doctrine. In other words, if there is probable cause for the original action to be brought, then it is difficult to envision the presence of the " 'exceptional circumstances' " recited by the Missouri court. *Id.* at 177. The *Macke Laundry Serv. Ltd.* court articulated that the exceptional circumstances rule has its roots in the attorney's fiduciary duty to the client and the public policy that attorneys should be free to pursue recognized procedures to competently represent their clients "unfettered by fear of personal liability." *Id.*

Because Prokop claims malicious prosecution by Hoch's attorneys, the question naturally arises as to what is meant by malice in this context. The court in *Macke Laundry Serv. Ltd.* at 179-80 addressed this issue, and we quote:

> The malice required to support a malicious prosecution action against an attorney differs from the malice required on the part of non-attorney defendant. In *Henderson*, 289 S.W. at 334-36, the Missouri Supreme Court held that the test to establish malice on the part of an attorney depends on whether the attorney acted upon a statement of facts provided by the client, or whether the attorney obtained the information acted upon. Earlier, in *Peck*, 3 S.W. at 581, the Supreme Court held that in order to show malice on the part of the attorney, where the attorney acted solely upon the facts related by the client, (1) the attorney must have known that there was no probable cause for the prosecution; and (2) the attorney must have known that the client was acting solely through improper motives. *Henderson* 289 S.W. at 335.

*Henderson v. Cape Trading Co.*, 316 Mo. 384, 289 S.W. 332 (1926), referenced in the quote, is a case in which the Missouri Supreme Court held that the client's misconduct was not imputed to the attorney. But if the attorney had knowledge, the *Macke Laundry Serv. Ltd.* court pointed out that an attorney could be liable for conspiring with the client, which is consistent with the holding of *Henderson*. Also, the Missouri court recounted that counsel could be liable when the attorney acts for his or her sole benefit, citing *Worldwide Marine Trading v. Marine Transport Serv.*, 527 F. Supp. 581 (E.D. Pa. 1981); when the attorney's acts rise to the level of active participation in fraud, citing *Astarte, Inc. v. Pacific Indus. Systems, Inc.*, 865 F. Supp. 693 (D. Colo. 1994); and when the attorney acts with actual malice or intent to harm, citing *Fraidin v. Weitzman*, 93 Md. App. 168, 611 A.2d 1046 (1992).

Our examination of this case leaves us with the impression that Hoch's attorneys did not do anything more than file suit on behalf of their client and represent her in those proceedings, plus provide some commentary to the media. If that is the sum and substance of what they did, it appears unlikely that a cause

of action exists for malicious prosecution. But the standard we must apply is whether there is a reasonable possibility that Prokop can allege facts which would bring the case within the rather strict and limiting guidelines for malicious prosecution suits against lawyers who represent their clients. While we are not prepared to say that Prokop cannot allege such facts, we know that proving them to be true is another matter. (The circle of malicious prosecution actions which could thereby be spawned is apparent.) Nonetheless, on a demurrer, in our view, the standard is relatively low, and thus while we agree with the trial court that Prokop has not pled a cause of action for malicious prosecution at this point, he may be able to do so. Thus, Prokop's assignment of error that he was entitled to leave to amend is well taken. Accordingly, we affirm the sustaining of the demurrer, but reverse the dismissal of Prokop's theory of recovery based on malicious prosecution, and remand for further proceedings consistent with our opinion.

*Frivolous Pleadings.*

In what we reference as Prokop's third theory of recovery, he asserts that Hoch's attorneys filed frivolous pleadings, and although not directly linked to that allegation, the petition at issue prays for attorney fees. Nebraska has a frivolous pleadings statute, Neb. Rev. Stat. § 25-824(4) (Reissue 1995), which provides that "[t]he court shall assess attorney's fees and costs if, upon the motion of any party or the court itself, the court finds that an attorney or party brought or defended an action or any part of an action that was frivolous . . . ." See, also, *In re Estate of Snover*, 4 Neb. App. 533, 546 N.W.2d 341 (1996). For the purposes of this statute, "frivolous" has been defined as a legal position wholly without merit, that is, without a rational argument based on law and evidence to support the litigant's position in the lawsuit. *First Nat. Bank in Morrill v. Union Ins. Co.*, 246 Neb. 636, 522 N.W.2d 168 (1994). "The term 'frivolous' . . . connotes an improper motive or a legal position so wholly without merit as to be ridiculous." *Behrens v. American Stores Packing Co.*, 236 Neb. 279, 288, 460 N.W.2d 671, 677 (1990). Any doubt about whether a legal position is frivolous or taken in bad faith must be resolved in favor of the party whose legal position is in question. *Sports Courts of*

*Omaha v. Meginnis*, 242 Neb. 768, 497 N.W.2d 38 (1993). Finally, attorneys and litigants should not be inhibited in pressing novel issues or in urging a position which can be supported by a good faith argument for an extension, modification, or reversal of existing law. *Shanks v. Johnson Abstract & Title*, 225 Neb. 649, 407 N.W.2d 743 (1987). *Shanks* also points out that the determination of whether a particular claim or defense is frivolous must depend upon the facts of a particular case.

With the foregoing law in mind, it is apparent that there is indeed a claim to be made under Nebraska law for attorney fees for defending a claim which is frivolous, but it is not an easy one to plead and prove. Prokop's petition merely uses the core words "frivolous pleadings" and "attorney fees." There are no factual allegations in the petition, as there must be, to support such a claim. As we have said, the standard for sustaining a demurrer *and* dismissing the underlying lawsuit is a finding by the trial court that there is no reasonable possibility that an amendment will cure the defect. Regardless of whether any facts that Prokop might allege on this theory can be proved to be true, we believe that if he knew how to do so, Prokop could allege facts stating a cause of action under § 25-824 for attorney fees based on the filing by Hoch's attorneys of a frivolous pleading, presumably the original defamation lawsuit against him. We do not take the standard for the "dismissal of a lawsuit after a demurrer is sustained" to be that the person doing the pleading, in the trial court's judgment, is unable to properly plead due to lack of education, understanding, or intelligence. However, there may well be a point where the failure to properly plead becomes a failure to timely prosecute, giving rise to dismissal on such grounds, but that is not before us. Rather, we see the standard for deciding demurrers to be an objective one, and when viewed from that standpoint, it is apparent that we cannot say that there is no reasonable possibility that a claim for recovery of attorney fees cannot be stated. Thus, the trial court erred in sustaining the demurrer for recovery of attorney fees on the theory of frivolous pleadings.

We have some sympathy with the difficulties presented to the trial judge by this litigation. Prokop's multiple petitions in this case are much like vegetable soup—a bunch of chopped

up stuff thrown into a pot. The law is that a pro se litigant is held to the same standards as one who is represented by counsel. *State v. Lindsay*, 246 Neb. 101, 517 N.W.2d 102 (1994). While people have a right to represent themselves, the trial court also has inherent powers to compel conformity to Nebraska procedural practice. Those powers might well be used to bring this litigation to a timely and orderly conclusion.

## CONCLUSION

We uphold the sustaining of the demurrer as to any theory of recovery based on slander or libel, but reverse, and remand with respect to the theories of recovery based on malicious prosecution and attorney fees for filing frivolous pleadings. Although the demurrers were properly sustained as to such theories, Prokop is entitled to a reasonable time to amend his petition as to those two theories.

AFFIRMED IN PART, AND IN PART
REVERSED AND REMANDED.