**Carroll ZAHORSKY, M.D., and Zahorsky Surgical Clinic, Inc., Plaintiffs-Appellants,**

**v.**

**GRIFFIN, DYSART, TAYLOR, PENNER AND LAY, P.C., and Alex M. Lewandowski, and Kathie and Phillip Brisciano, Defendants-Respondents.**

**No. WD 33771.**

Missouri Court of Appeals, Western District.

Feb. 13, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied April 2, 1985.

Application to Transfer Denied May 29, 1985.

Stephen G. Mirakian, Kansas City, for plaintiffs-appellants.

James W. Benjamin, Kansas City, for Dysart, et al.

John M. Klamann, Kansas City, for defendants-respondents.

Before LOWENSTEIN, P.J., and MANFORD and BERREY, JJ.

BERREY, Judge.

Dr. Carroll Zahorsky and Zahorsky Surgical Clinic, Inc., (Zahorsky), plaintiffs in an action for malicious prosecution of a medical malpractice suit, appeal a verdict directed against them at the close of the plaintiffs' evidence and in favor of defendants Kathie and Phillip Brisciano, plaintiffs in the underlying action for medical malpractice; Alex Lewandowski, attorney for plain-

tiffs in the underlying action; and Griffin, Dysart, Taylor, Penner & Lay, P.C., legal firm with which Lewandowski was associated. Judgment affirmed.

Zahorsky contends the trial court committed reversible error by granting the defendants' motion for directed verdict in three respects. First, Zahorsky alleges the evidence was legally sufficient to sustain each requisite element of a cause of action in malicious prosecution. Second, the trial court erred in admitting, considering and relying upon evidence that Zahorsky, as defendant in the underlying action, had made a motion for directed verdict in the original medical malpractice action and the original trial judge denied the motion. And, third, the trial court applied an erroneous standard of law in determining the evidence was insufficient to support a prima facie showing of the elements of lack of probable cause and malice in pursuing the original medical malpractice action.

■ To maintain a cause of action in malicious prosecution, a plaintiff has the burden of proving the defendant instituted the original judicial proceeding without probable cause and with malice, the proceeding terminated in the plaintiff's favor, and the plaintiff was damaged. *Stafford v. Muster*, 582 S.W.2d 670, 675 (Mo.1979). In the instant case the trial judge determined that Zahorsky had failed to show lack of probable cause and that probable cause in the case of *Brisciano v. Zahorsky* indeed existed as a matter of law. The trial court also held that the plaintiff's evidence failed to show any of the defendants guilty of malice in bringing the original proceeding.

■ Before embarking upon a recitation of the relevant facts found within the voluminous record, it is necessary to set forth the light under which those facts will be viewed. Zahorsky cites *Palermo v. Cottom*, 525 S.W.2d 758, 762 (Mo.App.1975), and V.A.M.R. § 72.01, in asserting that the Court of Appeals must view the plaintiff's evidence in the light most favorable to the plaintiff, give him the benefit of all reasonable inferences therefrom, and disregard all evidence unfavorable to the plaintiff. However, this court is not instructed by precedent, and certainly not by Rule 72.01 as cited by Zahorsky to disregard *all* evidence unfavorable to the plaintiff's cause but only to disregard the *defendant's* evidence which is unfavorable to the plaintiff. *Palermo v. Cottom, supra; Bauer v. Adams*, 550 S.W.2d 850, 852 (Mo.App.1977). In application, appellate courts have found that the plaintiff's evidence, standing alone, is sufficient to show the existence of probable cause in a subsequent malicious prosecution action and have upheld verdicts directed in favor of the defendant (plaintiff in previous suit) on that basis. For example, in *Kvasnicka v. Montgomery Ward & Co.*, 350 Mo. 360, 166 S.W.2d 503 (1942), the court reversed the denial of defendant's motion for directed verdict at the close of all the evidence in stating, "The prima facie proof of probable cause made by plaintiff's own evidence was not overcome." *Id.*, 166 S.W.2d at 514. *See also: Bonzo v. Kroger Grocery & Baking Co.*, 344 Mo. 127, 125 S.W.2d 75, 79 (1939). A more recent case, though not concerning malicious prosecution, *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 121 (Mo. banc 1983), notes "the party with the burden of proof may be bound by uncontradicted facts elicited from his own witness on direct examination." "[O]therwise stated, if *plaintiff's own evidence* and the *undisputed facts* show any probable cause for the prosecution ... then plaintiff fails and the demurrers should have been sustained." *Higgins v. Knickmeyer-Fleer Realty and Investment Co.*, 335 Mo. 1010, 74 S.W.2d 805, 812 (1934). (Emphasis added.) Thus, it is not, as Zahorsky asserts, "both a waste of this court's time and contrary to all existing law for this court to consider evidence unfavorable to the plaintiff's position that may have been present at this trial." Evidence of probable cause is necessarily adverse to the plaintiff but is nevertheless to be taken under consideration when introduced by the plaintiff.

The evidence considered in the light most favorable to plaintiff, Zahorsky, while giv-

ing plaintiff the benefit of all reasonable inferences, and the undisputed facts, are that on March 21, 1974, Kathie Brisciano visited the Zahorsky Surgical Clinic, Inc., to consult with Dr. Carroll Zahorsky regarding possible breast reduction surgery. Kathie had large breasts which had caused severe bra strap marks, back and neck pain. She was interested in reduction for functional purposes. The consultation lasted approximately one hour. Part of the session was spent by Zahorsky showing Kathie slides of women who had successfully undergone the surgery by Zahorsky's use of a "Strombeck reduction mammoplasty modified" technique. Zahorsky's consultation notes show he informed Kathie when she would resume normal activity and also informed her as to the scars and their locations. His notes do not refer to potential complications or risks, either generally or specifically, but do show Zahorsky advised Kathie that although she was "a bit borderline" for the modified Strombeck technique, he would recommend it for the best results. Zahorsky does not specifically remember educating Kathie about the possible complications associated with the particular surgery, but testified that he informed all patients about the complications.

Zahorsky scheduled Kathie's surgery, the first of an unanticipated three, for April 24, 1974, at the Trinity Lutheran Hospital in Kansas City, Missouri. Kathie was admitted to the hospital on April 22, 1974. Prior to surgery, she signed the hospital's standard consent form which read in part, "The nature and purpose of this procedure, possible alternative methods of treatment, the risks involved, and the possibility of complications have been fully explained to me. No guarantee or assurance has been given by anyone as to the results that may be obtained." The consent form regarded the operation entitled "Bilateral Reduction Mammoplasty."

During the course of the surgery, complications arose with the use of the modified Strombeck technique on the right breast causing Zahorsky to resort to the use of the standard Strombeck technique on the left breast. Despite the complications, the surgery initially seemed a success. Kathie was satisfied with the size and shape of her breasts.

However, approximately one week after surgery, a complication known as necrosis, or dying tissue, developed in the healing process of the left breast. Zahorsky attempted to resolve the complication by cutting away the dead tissue, using tweezers and scissors, on an out-patient basis over the course of six to eight visits. Zahorsky was unable to use local anethesia during those sessions as it could have promoted further necrosis. When it became evident that anethesia was necessary to complete the debridement procedure, Kathie consented to a second surgery. Zahorsky performed the surgery on May 24, 1974, at Trinity Lutheran Hospital.

The debridement procedure resulted in Kathie's left breast being considerably smaller than her right breast. After numerous consultations, a third surgery was scheduled to correct the problem. Zahorsky could not specifically remember what he advised Kathie concerning the third surgery, but was "pretty certain" he spoke of enlarging both the left and the right breasts by placing implants in them to improve the symmetry. Zahorsky remembers informing Kathie that in his practice, there was "an incidence of about fifty percent or about one in two chances that she could get firm." He told Kathie that he was not satisfied with the scarring and the shape of the right breast and he wanted to revise it.

On August 11, 1974, Kathie was admitted to Trinity Lutheran Hospital after signing an admission consent form wherein the admitting diagnosis was described as "DEFORMITY OF BREAST SECONDARY TO REDUCTION MAMMOPLASTY WOUND DEHISCENCE LEFT BREAST." Prior to surgery, Kathie signed an operative consent form which described the surgery, in crowded longhand, as "Bil. Revision deformity breast & Reduction mamoplasty wound dehiscence." The form was signed in the presence of Nurse Virginia Swanson.

Nurse Swanson does not remember Kathie and does not remember whether or not Kathie spoke to her. She testified that if a patient did not want to sign the consent form she would not force them. Dr. Gregory Politi, an anesthesiologist, testified from his notes that he saw Kathie the night before the surgery. He does not remember seeing her, nor does he remember their conversation. However, he stated that if there was confusion as to the surgery, he would have noted it. Zahorsky performed the third surgery and placed implants in both the right and the left breast.

On October 17, 1974, Kathie and Phillip consulted with attorney Alex Lewandowski of the law firm Griffin, Dysart, Taylor, Penner and Lay, regarding the surgeries and subsequent complications. Lewandowski's consultation notes, which Zahorsky placed into evidence, reveal what Kathie told her attorney at this initial meeting and are paraphrased as follows. On Kathie's first visit to the Zahorsky Surgical Clinic, Zahorsky explained to her that there were two different procedures for breast reduction. First, the nipple could be removed but it would not retain its sensation. Second, the nipple could be slid up. He said the operation would take two to three hours. Kathie said, "I asked him if there was a chance of cancer and he said absolutely not—I asked him if there was any chance for complications or other surgery—could anything go wrong—he said absolutely not, he only had complications with one case in his career and that case involved a woman who fell down right after surgery—he said after five to seven days I would be perfectly all right and would be able to resume my normal lifestyle." Phillip later spoke with Zahorsky about the surgery and said the doctor had told him there was no chance of anything going wrong.

Kathie said the first surgery lasted five hours and forty-five minutes and she was in the hospital for seven days. Approximately a week later, the stitches began coming loose from the incision on the left breast and the wound began draining. Za-

horsky told Kathie there was a breakdown of the fatty tissue and something would have to be done about it. He also said, "That's what I was afraid of." Kathie said the debridement procedure consisted of the doctor cutting out portions of the fatty tissue and then packing the breast with gauze. The procedures were performed for one to two weeks until she "couldn't take anymore." Zahorsky performed the second surgery which resulted in the left breast being "almost gone and the nipple inverted." Kathie described her right breast as being in "good shape" at that time.

Kathie next told Lewandowski, "After this surgery he (Dr. Zahorsky) said, 'I feel it's my fault and whatever the insurance company doesn't pay you and Phil can forget about the bill.' He said he would have another surgery and make [me] like new again.... Before the third surgery he said he would put an implant in the left breast to make it look like the right one. He showed me how one side of the right breast was a little higher than the other side and asked if he could straighten this out in surgery also. I told him the right one looked fine to me but he said he wanted to be more than good—to be perfect. He was also going to fix where the scar ends. I had no idea that he was going to put implants in the right breast and he said nothing about it."

Kathie described her breasts after the third surgery as "the left breast is smaller than the right—the right was [sic] also received an implant and now it is odd shaped and the nipple is off to the right side." Kathie said that on their last visit to Zahorsky's office, the doctor told her and Phil, "On hindsight, I made an error in judgment at the time."

Kathie also told Lewandowski that on the night before the third surgery, she told the anesthesiologist and a nurse she did not want Zahorsky to touch her right breast. She had tried to contact Zahorsky but was unable to reach him and told hospital personnel she needed to see him.

The following facts were either contained in Lewandowski's deposition or in exhibits referred to in the deposition at trial by Zahorsky. On January 31, 1975, Lewandowski sent the Briscianos a letter informing them that the firm's "initial investigation reveals that you may have a cause of action.... We may find later that a good cause does not, in fact, exist. In that case, we will advise you immediately." The letter also set forth the terms of an employment agreement. Lewandowski admitted that the initial investigation to which the letter referred was the consultations with the Briscianos. His time sheet, though, indicates a member of the firm conducted research on previous lawsuits.

Some time prior to April, 1975, Lewandowski contacted Zahorsky, explained to him that he was representing the Briscianos and requested Zahorsky's medical files on Kathie Brisciano. Zahorsky complied with the request.

Prior to filing the petition in the original malpractice action, Lewandowski claimed he had read "cover to cover, every word" of Zahorsky's medical records, Trinity Lutheran Hospital's records involving the three different surgeries, and the University of Kansas Medical Center's records where Kathie had admitted herself on October 12, 1975, for examination at Lewandowski's request. As a result of the examination, Dr. Mani, a plastic surgeon, concluded, "Scars are very acceptable. Nipple in good position. Implants in good position. Capsule feel a bit tight, but is quite acceptable." Lewandowski also claimed to "have talked from time to time with some people in the medical community, just about informed consent generally and the requirements of advising the people of complications or the risk of surgery, the duties of a physician." A member of the law firm had also spoken with a plastic surgeon. Lewandowski said the law firm had literature confirming that the risks to which Kathie was exposed should be discussed with a patient.

On April 16, 1976, Lewandowski, on behalf of Kathie and Phillip Brisciano, filed a petition in the Jackson County Circuit Court alleging malpractice by Zarhorsky in the areas of informed consent, negligent selection of surgical procedure, battery, breach of contract, loss of services. They sought both actual and punative damages. Later Lewandowski amended the petition to contain only the theories of informed consent, negligent selection of procedure, battery, and loss of services.

The trial of *Brisciano v. Zahorsky* lasted four days. Zahorsky moved for a directed verdict at the close of the plaintiffs' evidence which the trial judge denied. Following conclusion of defendants' evidence, Lewandowski submitted the case to the jury on the counts of informed consent and battery; the jury found in favor of Zahorsky. The Briscianos appealed their cause but subsequently dismissed the appeal voluntarily.

In June of 1979, Zahorsky filed a petition against the defendants alleging malicious prosecution, abuse of process, and professional irresponsibility and negligence. Zahorsky later amended his petition to include a count of tortious breach of duty. Prior to trial, he voluntarily dismissed the count of professional irresponsibility and negligence. Zahorsky presented evidence for five days after which defendants moved for a directed verdict and the court affirmed the motion. Zahorsky's complaint of error on appeal is with regard to the count of malicious prosecution.

Appellant declares, "if Zahorsky's evidence made a prima facie showing of lack of probable cause sufficient to support the inference of malice in pursuing any of these causes of action [informed consent, battery, or negligence in selection and performance of surgical technique], Zahorsky was entitled to have the issues submitted to the jury." In his reply brief, appellant explains his statement to apply only to cases where none of the counts succeed, such as here, and not where some counts succeed and the litigant attempts to bring suit in malicious prosecution on the unsuccessful counts. However, the elements for a cause of action in malicious prosecution

refer to the commencement of a "proceeding" by the defendant. *Stafford v. Muster, supra.* Likewise, the language of MAI 23.07 [1980 Revision], the malicious prosecution verdict directing instruction, requires the jury to find that "defendant instigated a *judicial proceeding* against plaintiff which terminated in favor of plaintiff ..." (emphasis added). The references are to a "proceeding" and in no way indicate that any of the theories underlying a particular proceeding could render the entire action one without probable cause. The interpretation advanced by the plaintiff, if accepted, would invite a multitude of unwarranted litigation arising from situations where a proceeding is instituted on the basis of inconsistent theories, or where theories are abandoned during the proceeding, and where the proceeding is terminated adversely to the plaintiff.

■ Missouri law does not favor suits in malicious prosecution. *Sanders v. Daniels International Corporation,* 682 S.W.2d 803, 806 (Mo. banc 1984); *Bonzo v. Kroger Grocery & Bakery Co., supra,* 125 S.W.2d at 79; *Palermo v. Cottom, supra,* at 761; *Bellington v. Clevenger,* 228 S.W.2d 817, 818 (Mo.App.1950); *Cole v. Neaf,* 221 F.Supp. 875 (E.D.Mo.1963), *aff'd,* 334 F.2d 326 (8th Cir.1964) (civil suit). In *Wise v. McNichols,* 63 Mo.App. 141 (1885), a suit for malicious attachment, the trial court allowed the jury to be instructed that probable cause requires the defendant to have believed in the truth of both grounds for attachment; reason to believe the truth of *one* of the grounds set forth is not sufficient. On appeal, the court declared, "This was an incorrect statement of the law." *Id.,* at 144. An action in malicious prosecution therefore requires the plaintiff to show want of probable cause for the proceeding. The plaintiff does not meet his burden by showing the defendant's lack of probable cause in one of the number of theories underlying the proceeding where other theories are supported by probable cause.

■ In the instant case, the pivotal question is whether the defendants had proba-ble cause to bring the original action; malice "may be inferred from the facts which go to establish want of probable cause." *Sanders v. Daniel International Corporation, supra,* at 812 n. 3. *Henderson v. Cape Trading Co.,* 316 Mo. 384, 289 S.W. 332, 334 (1926). When probable cause exists, the issue of malice becomes irrelevant because even if malice is clearly shown, the action for malicious prosecution must fail. *Peck v. Chouteau,* 91 Mo. 138, 3 S.W. 577, 581 (1887); 28 A.L.R.3d 748, 752 (1969).

■ Because, "the establishment of want of probable cause involves proving a negative, slight proof thereof is all that is required to make a prima facie case." *Haswell v. Liberty Mut. Ins. Co.,* 557 S.W.2d 628, 633 (Mo. banc 1977); *Hughes v. Aetna Ins. Co.,* 261 S.W.2d 942, 945 (Mo. 1953). Nevertheless, the proof of all essential elements of malicious prosecution, including want of probable cause, must be strict and clear. *Higgins v. Knickmeyer-Fleer Realty & Investment Co., supra,* 74 S.W.2d at 814; *Parthenopoulos v. Maddox,* 629 S.W.2d 563, 570 (Mo.App.1982); *Huffman v. Meriwether,* 201 S.W.2d 469 (Mo.App.1947).

■ The Supreme Court of Missouri has recognized the definition of probable cause for the initiation of a civil action to consist of "a belief in the facts alleged, based on sufficient circumstances to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under the facts the claim may be valid under the applicable law." *Haswell v. Liberty Mut. Ins. Co., supra,* at 633. Persons initiating legal proceedings are held responsible for the facts known to them at the time and also "for all other pertinent facts which he could have ascertained by due diligence prior to instituting the prosecution." *Hoene v. Associated Dry Goods Co.,* 487 S.W.2d 479, 483 (Mo.1972); *See also: Dodson v. MFA Insurance Company,* 509 S.W.2d 461, 467 (Mo.1974).

Probable cause does not depend upon what may have ultimately proved to be

the actual state of facts embraced in the previous action or proceeding, but instead upon the honest and reasonable belief of one who instigated its prosecution. If it appears that a reasonably prudent person would have believed and acted under the circumstances as such person did, then the existence of probable cause is sufficiently established.

*Hughes v. Aetna Ins. Co., supra,* at 949. Where there is no dispute as to the facts underlying a claim for malicious prosecution, the question of probable cause is one of law for the court. *Standley v. Western Auto Supply Company,* 319 S.W.2d 924, 926 (Mo.App.1959); *Henderson v. Cape Trading Co., supra,* 289 S.W. at 334.

 Where a *client* has made a full and truthful disclosure to his attorney of all material facts, including those within the client's actual knowledge and those he might have learned by reasonable diligence, and relies in good faith on the advice of his attorney, the client has an absolute defense to an action in malicious prosecution. *Haswell, supra,* at 636; *See also: Hupp v. North Hills Lincoln-Mercury, Inc.,* 610 S.W.2d 349, 354 (Mo.App.1980); *Hernon v. Revere Copper and Brass Inc.,* 494 F.2d 705, 707 (8th Cir.1974). Although the defense is affirmative, with defendant having the burden of proof, it is "inextricably bound up with the plaintiff's burden to demonstrate lack of probable cause." *Hernon,* at 707. "[I]f there is no material contradiction in the evidence that advice of counsel was relied on after all material facts and circumstances had been disclosed by defendant, the court should rule on probable cause as a matter of law." *Hernon,* at 708. Where the defendant offers no evidence and the evidence of the plaintiff is uncontroverted, the facts are therefore not in dispute and the question of probable cause is a question for the court. *Standley v. Western Auto Supply Co., supra,* at 930. Zahorsky has failed to present evidence showing that Kathie did not make a full disclosure of the facts as she knew them or that there were additional material facts she could have learned through reasonable investigation. Neither

has Zahorsky shown Kathie pressured her attorney to instigate the suit against his professional judgment. The evidence presented does not create a conflict as to whether or not Kathie was truthful in her version of the facts.

The following facts are undisputed: Zahorsky cannot specifically remember what he said to Kathie. The potential risks and complications were not set forth on the hospital consent forms. Zahorsky showed Kathie slides of successful surgeries. A complication, necrosis, occurred as a result of the first surgery. The surgical description and the consent form regarding the third surgery was written in ambiguous medical terminology. The nurse and anesthesiologist Kathie claimed to have spoken with prior to the third surgery did not remember Kathie. Zahorsky told Kathie and Phillip he had made an error in judgment. Furthermore, not one witness testified who directly contradicted Kathie's allegations, and Kathie and Phillip were consistent in their testimony.

 Zahorsky claims that the highly material issue in conflict and for the jury is whether or not Zahorsky committed the malpractice and battery alleged by defendant (plaintiff in the underlying action), and cites *Hoene v. Associated Dry Goods Co., supra,* as authority. *Hoene* involved malicious prosecution of a shoplifting charge. Plaintiff prevailed and defendants on appeal alleged the verdict should have been directed in their favor arguing that "a mere conflict as to 'how the incident or incidents occurred' does not create a conflict on probable cause." *Hoene* at 484. The Missouri Supreme Court disagreed, stating, "[t]his was not a mere conflict as to 'how'; it was a direct conflict as to what the plaintiff did, the very act which was the basis of her arrest and prosecution." The "act" referred to in *Hoene* was whether the plaintiff placed the *store's* gloves or her *own* gloves in her bag. Plaintiff testified she had purchased the gloves previously, was taking them back for exchange, and presented the sales receipt to the security

officer. Defendants' witnesses testified they saw the plaintiff pick up a pair of gloves from the store counter and place them in her bag. It was undisputed that plaintiff presented a corresponding sales slip, she was only in possession of one pair of gloves after being seized, and the witnesses had been in a position to observe what had actually occurred. The plaintiff's evidence, coupled with the undisputed facts, created a clear dispute as to whether or not the store should have sought prosecution of the plaintiff. *Hoene* cites *Randol v. Kline's Incorporated,* 322 Mo. 746, 18 S.W.2d 500 (1929), as justification for the decision. In *Randol,* the alleged shoplifter unequivocally denied any intention of shoplifting, and ample evidence existed to rebut the truthfulness of the only eye witness. This court does not agree with Zahorsky that *Hoene* is on point with the instant case. In both *Hoene* and *Randol* the plaintiff set forth evidence creating a clear dispute as to the defendant's reasonable belief in the facts. Zahorsky's assertion that there is a dispute as to whether he committed malpractice or battery, without direct evidence establishing Kathie's untruthfulness, does not create the material contradiction required in a malicious prosecution action. The question of probable cause was clearly one of law for the court.

Regarding *attorneys,* the court in *Henderson v. Cape Trading Co., supra,* 289 S.W. at 336, stated, "[W]hether the defendants in a malicious prosecution suit be attorneys or others, the pivotal question is: Did they proceed without probable cause?" Approximately one hundred years ago, the Missouri Court of Appeals at St. Louis, in *Staley v. Turner,* 21 Mo.App. 244, 250 (1886), stated, "If the attorney proceeds upon facts stated to him by his client, believing those facts to be true, and if those facts, if true, would constitute probable cause for instituting such a prosecution, then the attorney is exonerated." Likewise, the Missouri Supreme Court, in *Peck v. Chouteau, supra,* 3 S.W. at 581, stated, "We state again that the attorney has a right to advise and act upon such information as the client reveals to him. Nothing short of complete knowledge on the part of the attorney that the action is groundless, and that the client is acting solely through illegal or malicious motives, should make him liable in these actions." *Henderson v. Cape Trading Co., supra,* 289 S.W. at 336, declares a fair statement of the law to be:

> If the existence of the relation of attorney and client is shown, and it appears that the attorney has acted with the authority of his client, solely in the interest of his client, and without knowledge of fraud, collusion, or sinister intent to injure or deceive a third party, he should not be held liable to such third party in an action for malicious prosecution, except upon proof of *actual knowledge that the charge was groundless.*

(Emphasis added.)

 Zahorsky emphatically opposes the law of *Henderson* claiming that the later case *Haswell v. Liberty Mut. Ins. Co., supra,* and MAI 23.07 have stripped *Henderson* of all vitality. The *Haswell* definition of probable cause stated earlier, provides that to have probable cause the defendant must have a reasonable belief in the existence of facts on which the claim is based and reasonable belief that the facts state a valid claim. In determining reasonable belief, a party is held "responsible not only for all facts which he knows at the time, but for all other pertinent facts which he could have ascertained by due diligence." *Hoene v. Associated Dry Goods Co., supra,* at 483.

MAI 23.07 sets forth one of the elements of malicious prosecution to be that the defendant acted without reasonable grounds; MAI 16.05 defines reasonable grounds as "the existence of facts which would warrant an ordinarily cautious and prudent person in believing plaintiff was guilty of the offense charged." Zahorsky argues there is a long line of cases more recent than *Henderson* where the courts of Missouri have stated the elements of a malicious prosecution action without distinguishing between attorneys and lay persons. However, none of the cases cited by Zahorsky, *Palermo, supra; Stafford, su-*

pra; *Haswell, supra; Hoene, supra,* involve an attorney-defendant.

This court agrees with Zahorsky that the *definition* of probable cause set forth in *Haswell* is applicable to any defendant in an action for malicious prosecution. However, it should be noted, "It may be true that *evidence* which would be sufficient to show a want of probable cause for the client would not establish the same thing as to attorneys." *Henderson,* 289 S.W. at 336, citing *Burnap v. Marsh,* 13 Ill. 535, 539–40 (1852). (Emphasis added.)

▆▆ The statement in *Henderson* with respect to the determination of probable cause on the part of an attorney in a malicious prosecution action must be applied within the context of *Haswell.* The court in *Haswell* adopted the Restatement (Second) of Torts § 675 (1977) definition of probable cause which was set forth earlier. The focus of the definition is on the *reasonable belief* of the party in question. Under the holding of *Henderson* the reasonableness of the attorney-defendant's belief is measured by whether he had "actual knowledge the claim was groundless." The existence of evidence contrary to the position taken by the attorney is not sufficient to support the inference that the attorney was unreasonable in his belief the claim was valid.

The court in *Henderson* cited *Mechem on Agency* (2d Ed.) § 2219, and quoted:

An attorney at law, who acts in good faith and is prompted only by professional duty and fidelity to his client, is not liable to the other party for injuries which the latter may sustain from the fact that the action was begun or prosecuted, by the attorney's client, either maliciously or without probable cause.... He can rely in the first instance only upon the advice and instructions of his client, and it would impose upon the attorney a perilous responsibility if he could justify his participation in the suit only by its result.

The court went on to quote from the same treatise:

In order, however, to render the attorney liable for a malicious prosecution by his

client, it must not only appear that the attorney knew that the prosecution was malicious, but that he also knew that it was without cause. It is not enough that he might, with reasonable diligence have ascertained that there was no probable cause for the prosecution. The attorney has a right, in good faith, to advise and act upon the facts which he gets from his client, and it is not his duty to go elsewhere for information.

*Id.,* at § 2220.

▆▆ The issue in the instant case is not whether reasonable minds could differ as to the outcome of the underlying malpractice action. The issue when properly framed, is whether Zahorsky set forth substantial evidence to show Lewandowski did not in good faith believe the facts brought to him by his clients and did not reasonably believe that those facts stated a valid claim. At the close of Zahorsky's evidence, the facts material to this issue were undisputed and therefore the question of probable cause was properly for the court. *Henderson, supra,* 289 S.W. at 334. Zahorsky's evidence failed to "impugn [Lewandowski's] good faith belief in the guilt of [Zahorsky] on the basis of the known facts and circumstances." *See: Dodson v. MFA Insurance Company, supra,* at 467. Zahorsky's evidence and the undisputed facts clearly show probable cause as a matter of law. Lewandowski's clients unequivocally told him that Zahorsky assured them absolutely nothing could go wrong. Kathie told Lewandowski she had asked Zahorsky if there was a chance of subsequent surgery and he said absolutely not. Kathie's statements and hospital records show that complications arose and Kathie was subjected to three surgeries. Lewandowski knew necrosis was a serious risk in reduction surgery and at the time of trial, had retained an expert to testify on the subject and on the risk of subsequent surgery. Lewandowski had reviewed all medical records including consent forms. It is elementary that failure to inform a patient of serious potential risk can give rise to a cause of action in medical malpractice. *See: Douthitt v. U.S.,* 491 F.Supp. 891 (D.C.Mo.1980). Kathie told Lewandowski she had not con-

sented to an implant being placed in her right breast, but yet Zahorsky performed the surgery. Failure to obtain the patient's consent for a surgical procedure can give rise to an action in battery. *See: Hershley v. Brown,* 655 S.W.2d 671 (Mo. App.1983).

■ Although Lewandowski did not call an expert to testify on malpractice in surgical selection and technique, this fact alone, in light of earlier discussion, will not show want of reasonable grounds for the entire proceeding. Even if this was the sole count in the original action, Zahorsky had made the following statements to Kathie, "On hindsight, I made an error in judgment at the time," and, "I feel its my fault...." It is true that under Missouri law an expert witness is required to sustain a cause of action in medical malpractice, but we note:

> To hold that the person initiating civil proceedings is liable unless the claim proves to be valid, would throw an undesirable burden upon those who by advancing claims not heretofore recognized nevertheless aid in making the law consistent with changing conditions and changing opinions.

Restatement (Second) of Torts § 675 comment f (1977).

Under the general principles set forth, Zahorsky has failed in his burden to make a showing of want of probable cause as to either the Briscianos, Lewandowski, or his law firm. The facts known to Lewandowski at the time he commenced suit are undisputed. Zahorsky also failed to create a clear dispute as to the truthfulness of the Briscianos' statement.

Point I is denied.

■ In his second point Zahorsky argues the directed verdict must be ruled improper because the trial judge relied upon the fact that he had moved for directed verdict in the original action for medical malpractice and the trial judge overruled the motion. This court agrees with Zahorsky that overruling of a motion for directed verdict in the original action does not conclusively establish the existence of probable cause. *See: Hughes v. Aetna Ins. Co., supra,* at 950. In his third point Zahorsky

argues the trial judge committed error in that he applied an improper legal standard to the elements of malicious prosecution, namely probable cause, by holding that an attorney will not be liable for malicious prosecution except upon a showing he had actual knowledge the charge was groundless. We have addressed this argument under Point I. The general rule governing appellate review in Missouri is regardless of the reasons behind the trial judge's decision, this court will affirm the directed verdict if it was properly ruled. *Howell v. Welders Products and Services, Inc.,* 627 S.W.2d 311, 313 (Mo.App.1981). It is not the function of this court to review the reasons assigned for the directed verdict. *Id.; Girardeau Contractors, Inc. v. Missouri Highway and Transportation Com'n,* 644 S.W.2d 360 (Mo.App.1982). Probable cause for the original action is established as a matter of law. Therefore, Zahorsky's Points II and III are ruled against him.

Judgment affirmed.

All concur.