Arthur L. WALKENHORST, Appellant–Respondent,

v.

LOWELL H. LISTROM & COMPANY, INC., Respondent–Appellant.

WD 39628.

Missouri Court of Appeals, Western District.

April 5, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1988.

Application to Transfer Denied July 26, 1988.

James D. Worthington, Lexington, for Arthur L. Walkenhorst.

Wesley B. Jennings, Kansas City, for Lowell H. Listrom & Co., Inc.

Before GAITAN, P.J., and TURNAGE and CLARK, JJ.

GAITAN, Presiding Judge.

This cause is an appeal and cross-appeal from a judgment, entered pursuant to a jury verdict, in favor of plaintiff, Arthur L. Walkenhorst (Walkenhorst), in a malicious prosecution case. The jury awarded Walkenhorst actual and punitive damages. Defendant, Lowell H. Listrom & Co., Inc. (Listrom), filed a motion for a new trial and a motion for a judgment n.o.v. Listrom's motion for a new trial was overruled, as was its motion for a judgment n.o.v. as to actual damages. The trial court, however, sustained Listrom's motion for a judgment n.o.v. as to punitive damages. Both parties appealed. Because we have concluded that critical factual determinations are unsupported by substantial evidence, we reverse the trial court's order overruling defendant's motion for a judgment n.o.v. as to actual damages and we affirm the trial court's order sustaining defendant's motion for a judgment n.o.v. as to punitive damages.

In late 1982, Bruce Robb, an account executive with Lowell H. Listrom & Co., a stock brokerage firm, telephoned Arthur Walkenhorst regarding certain stocks owned by Walkenhorst. Walkenhorst testified that thereafter Robb contacted him every day except Saturdays and Sundays to discuss the sale or purchase of various stocks owned by Walkenhorst. On April 8, 1983, Robb testified that he called Walkenhorst and asked if Walkenhorst would be interested in selling his Chrysler stock. Robb testified that he told Walkenhorst that "17 [dollars] looked like a pretty good price." Based on his conversation with Walkenhorst on that date, Robb entered an order to sell 121 shares of Chrysler common stock at $17 a share. Thereafter, on April 9th or 11th, 1983, Listrom mailed Walkenhorst a confirmation statement showing the sale of 121 shares of Chrysler at $17 a share by Listrom on Walkenhorst's behalf.

April 15, 1983 was the settlement date on which the Chrysler stock was due to be delivered to Listrom. Thereafter, Robb and/or other agents of Listrom made various attempts to contact Walkenhorst. Robb attempted to reach Walkenhorst by phone. Robb mailed two letters, one of which was certified, to Walkenhorst at his residence. Listrom, through its employee George Wombill, sent Walkenhorst a Western Union Mailgram advising Walkenhorst that, if he didn't deliver the Chrysler stock to Listrom by May 4, 1983, Listrom would be forced to buy 121 shares of Chrysler stock to cover the sale, and Walkenhorst would be liable for any losses.

When asked if he had received the confirmation of the stock sale, Walkenhorst answered, "I remember seeing this or a facsimile of it. I can't say whether this is the exact one. But I have seen one similar to that." Walkenhorst admitted refusing the certified letter, admitted receipt of the mailgram and admitted that he never personally contacted Listrom or any of its agents regarding the stock transaction. He also testified that, after April 8, 1983, he refused to talk to Robb and would hang up on him if he called. Walkenhorst further stated that he had never signed any writing granting Listrom the authority to conduct any business for him. He refused to respond to Listrom's demand for the stock. On May 5, 1983, pursuant to the regulations of the Securities and Exchange Commission, Listrom purchased 121 shares of Chrysler stock at $25.50 a share plus

commission to cover the April 8, 1983 sales transaction.

On May 5, 1983, Wesley Jennings, Listrom's attorney, wrote Walkenhorst a letter informing him that if he did not turn over the 121 shares of Chrysler stock to Listrom, Jennings would take legal action. Walkenhorst asked a friend, Carl Perry, who is an attorney, to respond to Jennings' letter on Walkenhorst's behalf. In a letter dated May 16, 1983, Perry advised Jennings that Mr. Walkenhorst had never given Robb written authorization to sell any stocks for him. On June 24, 1983, Listrom filed its Petition For Damages against Arthur Walkenhorst.

Listrom presented its cause against Walkenhorst to a jury on October 10, 1985. At the close of Listrom's evidence, the court sustained Walkenhorst's motion for a directed verdict.

Thereafter, in December, 1985, Walkenhorst filed a petition for damages against Listrom for malicious prosecution. The case was tried before a jury in April, 1987. The jury found in favor of Walkenhorst and awarded him $5,000 actual damages and $25,000 punitive damages.

On appeal, Walkenhorst contends the trial court erred (1) in granting Listrom's motion for a judgment n.o.v. on his claim for punitive damages because sufficient evidence was presented to support the claim; and (2) in refusing to permit the introduction of a certain letter written by Listrom into evidence because the letter was relevant and material evidence which showed Listrom's motives for filing the underlying lawsuit.

Listrom appeals alleging the trial court erred (1) in overruling its motions for a new trial and a judgment n.o.v. as to actual damages because Listrom had reasonable grounds [probable cause] for bringing the underlying lawsuit; (2) in overruling its motion for a judgment n.o.v. as to actual damages because the jury's finding that Listrom acted with "malice in law" was not supported by the evidence; and (3) in overruling its motion for a judgment n.o.v. as to actual damages because the underlying lawsuit was not terminated in such a manner as to support Walkenhorst's claim of malicious prosecution.

The elements of an action for malicious prosecution are (1) the commencement of a prosecution against the present plaintiff; (2) its instigation by the present defendant; (3) its termination in favor of the present plaintiff; (4) the absence of probable cause for such a proceeding; (5) the presence of malice; and (6) damage to the plaintiff therefrom. *Mullen v. Dayringer*, 705 S.W.2d 531, 534 (Mo.App.1985). To make a submissible case for the jury, the burden is on plaintiff to produce substantial proof to support each and every element of such cause of action. *Parthenopoulos v. Maddox*, 629 S.W.2d 563, 571 (Mo.App.1981).

In the instant case, sufficient evidence was presented to establish the existence of elements (1), (2), (3), and (6): Listrom brought suit against Walkenhorst; the litigation terminated in favor of Walkenhorst; and Walkenhorst suffered damage by incurring attorney fees. Our concern on this appeal is whether sufficient proof was presented to establish the absence of probable cause and the presence of malice.

When an absence of probable cause exists, malice may be inferred from the facts which establish want of probable cause. *Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay, P.C.*, 690 S.W.2d 144, 151 (Mo.App.1985). *See also Proctor v. Stevens Employment Services, Inc.*, 712 S.W.2d 684, 686–87 (Mo. banc 1986) (defining the degrees of "malice" necessary to find liability and award punitive damages in a malicious prosecution action arising from a civil proceeding). Conversely, when probable cause is shown to exist, the issue of malice becomes irrelevant because, even if the presence of malice is proven, the action for malicious prosecution must fail. *Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay P.C., supra*, 690 S.W.2d at 151.

As stated in the case of *Haswell v. Liberty Mutual Insurance Co.*, 557 S.W.2d 628, 633 (Mo. banc 1977):

> Probable cause for initiating a civil action consists of a belief in the facts alleged, based on sufficient circumstances

to reasonably induce such belief by a person of ordinary prudence in the same situation, plus a reasonable belief by such person that under such facts the claim may be valid under the applicable law.

See also *Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay, P.C.,* supra, 690 S.W.2d at 151. Since proof of the absence of probable cause is proof of a negative, it has been held that slight evidence is sufficient to make a prima facie case. *Haswell v. Liberty Mutual Insurance Co.,* supra, 557 S.W.2d at 633. "Nevertheless, the proof of all essential elements of malicious prosecution, including want of probable cause, must be strict and clear." *Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay, P.C.,* supra, 690 S.W.2d at 151. *Accord Parthenopoulos v. Maddox,* supra, 629 S.W.2d at 570; *Higgins v. Knickmeyer–Fleer Realty & Investment Co.,* 335 Mo. 1010, 74 S.W.2d 805, 814 (1934).

In our review of this issue, we view the evidence in the light most favorable to plaintiff, giving him the benefit of all inferences which may reasonably be drawn from the evidence in support of his cause of action; defendant's evidence is disregarded except as it may support the verdict. *Bayne v. Jenkins,* 593 S.W.2d 519, 521 (Mo. banc 1980); *Sanders Co. Plumbing & Heating, Inc. v. City of Independence,* 694 S.W.2d 841, 843 (Mo.App.1985). However, this court is not required to disregard *all* evidence which unfavorable to plaintiff. *Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay P.C.,* supra, 690 S.W.2d at 147. If plaintiff's evidence and the undisputed facts established by the whole record show any probable cause to bring the underlying litigation, such evidence is to be considered even though it is admittedly adverse to the plaintiff in a malicious prosecution action. *Id. Accord Higgins v. Knickmeyer–Fleer Realty & Investment Co.,* supra, 74 S.W.2d at 812. Moreover, "the plaintiff is bound by his own testimony, unless corrected or ex-

plained." *Zabol v. Lasky,* 555 S.W.2d 299, 304 (Mo. banc 1977).

We have carefully reviewed plaintiff's evidence and the undisputed facts on the whole record and conclude that insufficient evidence exists to support a finding that Listrom initiated and pursued the underlying litigation without probable cause. The record indicates, and Walkenhorst does not dispute, that a confirmation of the stock sale was sent by Listrom to Walkenhorst within three days of the transaction. Furthermore, Walkenhorst does not deny having received the confirmation. By his own testimony, he admits having seen a confirmation of the sale of Chrysler stock. Most importantly, he admits that, after April 8, 1983, he refused to personally communicate with Listrom despite their numerous attempts to contact him. It was not until after May 16, 1983, when Walkenhorst had Carl Perry write to Wesley Jennings on his behalf, that Listrom received written objection to the existence of a contact between Walkenhorst and Listrom for the sale of securities.

Under the Uniform Commercial Code, as adopted by Missouri, a contact for the sale of securities is enforceable if:

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; *or*

\* \* \* \* \* \*

(c) *within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt ...*

Section 400.8–319, RSMo 1986 (emphasis added).[1] Given the authority of § 400.8–319(c) and Walkenhorst's failure to

---

1. During the presentation of plaintiff's evidence, Defendant's Exhibit No. 5, the confirmation sent to Walkenhorst by Listrom, was admitted without objection. We have examined the confirmation and find that it comports with the statutory requirements of § 400.8–319(c).

deny the existence of a contract for the sale of stock in writing for over a month, Listrom could reasonably believe that it had a legal right to institute civil proceedings against Walkenhorst. Accordingly, it was error for the trial court to overrule Listrom's motion for a judgment n.o.v. as to actual damages. Walkenhorst's own evidence and the undisputed facts raise the presumption that Listrom had probable cause to bring the underlying litigation, a presumption that Walkenhorst failed to rebut by strict and clear evidence.

The order of the trial court overruling defendant's motion for a judgment n.o.v. as to actual damages is reversed and the order of the trial court sustaining defendant's motion for a judgment n.o.v. as to punitive damages is affirmed.

All concur.