962 P.2d 1048

**Donald R. SHANNAHAN, D.P.M., Plaintiff–Appellant,**

v.

**William F. GIGRAY, Jr., Defendant–Respondent.**

No. 23840.

Supreme Court of Idaho.

Boise, February 1998 Term.

July 27, 1998.

Ellis, Brown & Sheils, Chartered, Boise, for appellant. Allen B. Ellis argued.

Quane, Smith, Howard & Hull, Boise, for respondent. David S. Perkins argued.

SILAK, Justice.

This is an appeal by Donald R. Shannahan, D.P.M. (Shannahan) from a grant of summary judgment in favor of respondent William F. Gigray, Jr. (Gigray) in an action to recover damages for the tort of wrongful civil proceeding. This case arises out of a medical malpractice action brought against Shannahan by Gigray, an attorney, on behalf of a patient of Shannahan's (the patient). We affirm the grant of summary judgment in favor of Gigray.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In September 1991, Shannahan treated the patient for an ingrown toenail on the fourth toe of her right foot. He diagnosed her with a hard corn on the tip of her toe caused by a hammer toe deformity. In October 1991, Shannahan performed surgery on the patient's toe to correct the deformity. In January 1992, the patient went to see an internal medicine specialist whose examination revealed only a slight redness of the toe which

he described as a possible subclinical infection. This doctor saw no signs or symptoms of gangrene. The patient then visited Dr. Sid Garber (Garber), an orthopedic surgeon, who determined the patient's toe was gangrenous and amputated it in February 1992.

In October 1993, Gigray filed an action against Shannahan on behalf of the patient, stating claims for negligent medical treatment and lack of informed consent. During discovery, the patient stated in an answer to Shannahan's interrogatories that she had not authorized Shannahan to perform any surgery on her fourth right toe, other than upon the toenail. In her deposition, the patient also testified that she had not consented to surgery for a hammer toe and that as soon as she returned home, the toe began turning blue. The patient further testified that Shannahan did not have her sign any consent forms until after the surgery.

Shannahan's attorney later took the deposition of Garber who was retained by the patient as an expert witness. During that deposition, Garber testified that he did not know for a fact that there was a causal relationship between Shannahan's surgery and the resulting amputation of the patient's toe.

In November 1994, Shannahan moved for summary judgment on each of the issues raised by the patient in her complaint. Gigray filed an opposition memorandum and supporting affidavits of the patient and Garber. In the patient's affidavit, she again swore that she had not authorized the surgery to correct her hammertoe. Garber's affidavit stated that he was familiar with the procedure used in treating a hammer toe or mallet toe deformity, a tenotomy and capsulotomy, and that he was familiar with the standard of care used by podiatrists in Boise Valley. He further stated it was his opinion that if Shannahan had met the standard of care in performing this procedure, the amputation of the patient's toe would have been unnecessary

In January 1995, Garber's deposition was taken again. At this deposition, Garber testified that he had not spoken to any podiatrist on the manner in which a hard corn

located on the end of a toe is treated. He further stated: "I know the standard of care for foot surgery in this community. I am very familiar with that because orthopedists take care of feet all of the time, on a daily basis. I have no knowledge of podiatrists or what they do ..." Garber further testified that he had never reviewed Shannahan's chart regarding Shannahan's care of the patient, and had never reviewed Shannahan's deposition testimony. Finally, he testified that he had no opinion as to whether Shannahan was negligent in his treatment of the patient.

Shannahan moved to strike Garber's affidavit, arguing that based upon Garber's January 1995 deposition testimony, he was not properly qualified under I.C. § 6–1013 to testify as an expert witness as to the standard of care of podiatrists. The district court denied both Shannahan's motion to strike and motion for summary judgment.

The trial in the malpractice action commenced in August 1995. In contrast to her deposition testimony, the patient testified during direct examination that she had signed, but had not read, a typewritten sheet of paper prior to the surgery. She also testified that she had signed an authorization for surgery on the morning of her surgery. During cross-examination, she further testified that she understood at the time she signed the authorization for surgery that she was giving her consent to the surgery.

Following the patient's testimony, Garber was called to testify as an expert witness for the patient. Although Gigray understood that Garber was going to testify in accordance with the Garber affidavit, Gigray was unable to lay a proper foundation for Garber to render an expert opinion. Gigray could not establish that Garber, an orthopedic surgeon, had the personal knowledge required by I.C. § 6–1013 to testify to the standard of care of podiatrists practicing in Caldwell, Idaho in 1991.

After the patient and Garber testified at trial, Gigray recommended to the patient that she dismiss the action against Shannahan. Gigray advised the patient that she had not testified in accordance with the informa-

tion she had previously given about the consent issue, and that Garber could not be qualified as an expert witness. The patient and Shannahan entered into an agreement for the dismissal of the action with prejudice, with the patient agreeing to pay Shannahan $5,000.00 as costs and attorney fees. Both parties entered into a stipulation for dismissal with prejudice, and an order of dismissal was entered by the court pursuant to the stipulation.

In November 1995, Shannahan filed the instant action against Gigray, seeking damages for the tort of wrongful civil proceeding. Gigray moved for summary judgment. At the hearing, the district court granted Gigray's motion, ruling that Gigray had probable cause to file and pursue the action against Shannahan. Thus, one of the elements of the tort of wrongful civil proceeding was lacking. Shannahan appeals.

## II.

### ISSUE ON APPEAL

The issue on appeal is whether the district court properly granted summary judgment to Gigray on the basis that he had probable cause to file and pursue the malpractice action against Shannahan.

## III.

### ANALYSIS

#### A. Standard Of Review.

This Court's standard of review on an appeal from an order granting summary judgment is the same as the standard used by the district court in ruling on a motion for summary judgment. *State v. Rubbermaid, Inc.,* 129 Idaho 353, 355–56, 924 P.2d 615, 617–18 (1996); *Thomson v. Idaho Ins. Agency, Inc.,* 126 Idaho 527, 529, 887 P.2d 1034, 1036 (1994). Upon review, all disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Rubbermaid,* 129 Idaho at 356, 924 P.2d at

618. Summary judgment is appropriate if " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law'." *McCoy v. Lyons,* 120 Idaho 765, 769, 820 P.2d 360, 364 (1991) (quoting I.R.C.P. 56(c)).

In an action for malicious prosecution or the tort of wrongful civil proceeding, the district court "determines whether the defendant had probable cause for [the] action ... The jury's role is limited to adjudicating the facts necessary to enable the court to determine the existence, or lack, of probable cause." *Badell v. Beeks,* 115 Idaho 101, 103, 765 P.2d 126, 128 (1988). If there are no disputed facts as to the investigation made by the defendant before filing the lawsuit, and no disputed facts concerning the defendant's conduct in pursuing the lawsuit, the district court may resolve the issue of probable cause as a matter of law. *Id.*

#### B. The District Court Properly Concluded That Shannahan Failed To Prove Gigray Lacked Probable Cause In Pursuing The Malpractice Action Against Shannahan.

Malicious prosecution actions and actions for the tort of wrongful civil proceeding are disfavored and are limited by requiring the plaintiff to establish several elements. *Badell,* 115 Idaho at 102, 765 P.2d at 127; *Luther v. First Bank of Troy,* 64 Idaho 416, 421, 133 P.2d 717, 720 (1943). The plaintiff must prove all of the following elements: (1) that there was a prosecution; (2) that it terminated in favor of the plaintiff; (3) that the defendant was the prosecutor; (4) malice; (5) lack of probable cause; and (6) damages. *Rincover v. State,* 128 Idaho 653, 659, 917 P.2d 1293, 1299 (1996); *Badell,* 115 Idaho at 102, 765 P.2d at 127.

At the hearing on Gigray's motion for summary judgment, the district court found four of the six elements of the tort of wrongful civil proceeding or malicious prosecution,[1]

---

1. As the Court noted in *Badell v. Beeks,* the terms "malicious prosecution" and "wrongful civil proceeding" are used interchangeably, with the latter term used more appropriately regarding a

were present, *i.e.*, that there was a prosecution, that it terminated in favor of Shannahan, that Gigray was the prosecutor and that Shannahan had sustained damages. With respect to the malice element, the court ruled that this was disputed and that there was a genuine issue of material fact. With respect to the probable cause element, the court found that Gigray did have probable cause to file the malpractice suit against Shannahan, and did have probable cause to pursue the case to trial. The court found that when it became clear at the trial that there was no longer probable cause to continue with the suit, Gigray properly persuaded the patient to dismiss it with prejudice. The court thus found that Gigray had probable cause to file and pursue the lawsuit against Shannahan and therefore granted Gigray's motion for summary judgment.

 This Court has held that probable cause must be present when a proceeding is initiated, and it must be present in order to continue the proceeding. *Badell*, 115 Idaho at 103, 765 P.2d at 128. The Court has also held that the amount of probable cause necessary to initiate a civil proceeding is less than that required in a criminal action:

> [W]hen the proceedings are civil, while the person initiating them cannot have a reasonable belief in the existence of the facts on which the proceedings are based if he knows that the alleged facts are not true and his claim is based on false testimony, it is enough if their existence is not certain but he believes that he can establish their existence to the satisfaction of court and jury. In a word, the initiator of private civil proceedings need not have the same degree of certainty as to the relevant facts that is required of a private prosecutor of criminal proceedings.

*Id.* (quoting Restatement (Second) of Torts § 675, cmt. (d) (1977)). Probable cause exists if the attorney has a reasonable and honest belief that the client has a tenable claim. *Id.* at 104, 765 P.2d at 129.

In this case, the record shows that Gigray had probable cause to initiate the malpractice action against Shannahan. The patient came to Gigray seeking legal advice with respect to her toe surgery and they discussed the matter. Gigray observed that the toe had been amputated. He obtained certain of the patient's medical records from Shannahan, and he obtained a report from Garber who had amputated the patient's toe and discussed the matter with Garber. He also obtained medical records from the doctor who had referred the patient to Garber. Finally, he made a written demand upon Shannahan on the patient's behalf. Thus, we hold that Gigray could have had a reasonable and honest belief that his client had a legitimate cause of action for malpractice against Shannahan. He therefore had the requisite probable cause to file the lawsuit. *Badell*, 115 Idaho at 103–04, 765 P.2d at 128–29.

The complaint filed by Gigray set forth two claims for relief: (1) that Shannahan was negligent in performing surgery on the patient's toe which led to gangrene and the toe's amputation; and (2) that Shannahan performed the surgery on the patient's toe without her informed consent. We hold that Gigray had probable cause to pursue these claims to trial.

 With respect to the patient's negligence claim against Shannahan, Gigray could have reasonably believed the patient had tenable claims against Shannahan. Gigray retained Garber as an expert witness. In a sworn affidavit, pursuant to I.C. §§ 6–1012 and 6–1013, Garber stated that he was familiar with the podiatry standard of care in the Boise Valley, and was familiar with the procedure used in treating a hammer toe or mallet toe deformity. Garber further stated that it was his opinion, with reasonable medical certainty, that if the procedure followed by Shannahan had met the standard of care in the Boise Valley for the performance of a tenotomy and capsulotomy, there would have been no need to amputate the patient's toe. Garber also made similar statements in his first deposition. Based upon this information, Gigray had reason to believe he had probable cause to pursue the negligence claim.

*civil case.* 115 Idaho at 102 n. 1, 765 P.2d at 127 n. 1.

While Garber's testimony from his second deposition was somewhat contrary to his earlier testimony, we hold that Gigray still had probable cause to pursue this claim. After his second deposition, Shannahan moved to strike Garber's affidavit arguing that Garber was not properly qualified under Idaho law to testify as to the standard of care for podiatrists. Based upon Garber's later deposition testimony, the district court admonished Gigray that he would have to develop additional evidence at trial to establish that Shannahan was negligent in his treatment of the patient. However, the court denied Shannahan's motion to strike and motion for summary judgment. Gigray testified at his deposition in the instant action that up until the time Garber testified at trial, Gigray understood Garber was going to testify in accordance with his affidavit testimony. Thus, although Gigray was put on notice by the district court that he had a weak case, there is no factual dispute that he held a reasonable and honest belief that the patient had a viable claim. It was not until Gigray was unable to qualify Garber as an expert at trial that Gigray realized he no longer had probable cause to pursue the negligence claim.

■ With respect to the patient's claim that Shannahan performed the surgery without her consent, Shannahan admits in his appellate brief that Gigray's prosecution of the lack of informed consent claim was appropriate until the patient testified at trial, stating: "In view of the unexpected turn about by his client on the consent issue, Defendant Gigray cannot be faulted for his prosecution of this aspect of [the patient's] claim." Thus, it is conceded that it was not until the patient's actual trial testimony that Gigray became aware that probable cause no longer existed with respect to the informed consent issue.

At trial, when it became clear to Gigray that he could not qualify Garber as an expert witness, and when the patient completely changed her account of events with respect to the consent issue, Gigray, with the patient's consent, made a proposal to Shannahan to dismiss the action with prejudice and to pay him $5,000.00 as attorney fees and costs. Shannahan accepted and the parties entered into a stipulation dismissing the suit. The district court found that it was not until these events took place at trial that probable cause to pursue the lawsuit ceased to exist. The court ruled that at that time Gigray took the proper action and effectuated a dismissal of the lawsuit. We agree and hold that the district court, having found no genuine issue of material fact with respect to whether Gigray had a reasonable and honest belief that his client had tenable claims, and thus had probable cause to pursue his client's claims to trial, properly granted Gigray's motion for summary judgment.[2]

## IV.

## CONCLUSION

We hold that Gigray had probable cause to initiate and pursue the malpractice action against Shannahan until the trial was in progress. At that time, when Gigray realized that he no longer had probable cause to proceed, he dismissed the lawsuit. Thus, the district court properly granted Gigray's summary judgment motion in the action for the tort of wrongful civil proceeding. The judgment of the district court is therefore affirmed. Costs on appeal are awarded to respondent Gigray.

JOHNSON, SCHROEDER and WALTERS, JJ., concur.

2. Because the district court's ruling was focused on the probable cause element of an action for the tort of wrongful civil proceeding, Shannahan's appeal was likewise focused on that element. The district court's conclusion that the "favorable termination" factor existed in this case by virtue of the agreement and stipulation for dismissal with prejudice was not challenged by Shannahan, although Gigray argues that such a finding was incorrect as an alternative ground for affirming the summary judgment in his favor. Given our disposition of the "probable cause" element we need not reach the issue of whether a settlement agreement and stipulation for dismissal with prejudice constitute a "favorable termination" as that term is used in the context of actions for malicious prosecution or the tort of wrongful civil proceeding.

**670**

TROUT, Chief Justice, concurring in the result.

I agree with the result reached in this case, but I write separately to express the opinion that the Court's analysis of probable cause for each of the counts brought in the malpractice action goes beyond what was necessary to decide the case. By discussing whether there was probable cause to support the action for malpractice under both the theories of lack of informed consent and failure to meet the community standard of care (negligence), the court indicates that an action for wrongful civil proceeding can be maintained if *any* of the theories used to bring the underlying action is found to be lacking probable cause. I do not believe this to be the law.

Sections 674 and 675 of the Restatement (Second) of Torts (1977) speak in terms of "civil proceedings," not counts or causes of action. The use of the term "proceeding" indicates that the determination of probable cause must be made with regard to the action as a whole. Likewise, Idaho Jury Instruction 410 recites as an element of malicious prosecution that "the defendant caused a legal proceeding to be commenced." Thus, as long as one of the theories under which the case was pursued is supported by probable cause, the proceeding is supported by probable cause and an action for wrongful civil proceeding must fail. To hold otherwise "would invite a multitude of unwarranted litigation arising from situations where a proceeding is instituted on the basis of inconsistent theories, or where theories are abandoned during the proceeding, and where the proceeding is terminated adversely to the plaintiff." *Zahorsky v. Griffin, Dysart, Taylor, Penner & Lay, P.C.*, 690 S.W.2d 144, 151 (Mo.Ct.App.1985)(holding that "plaintiff does not meet his burden by showing the defendant's lack of probable cause in one of the number of theories underlying the proceeding where other theories are supported by probable cause"). Such a holding would also be incompatible with I.R.C.P. 8(e)(2) which specifically allows plaintiffs to plead claims "regardless of consistency."

As the opinion points out, even Shannahan admits that the lack of consent claim was supported by probable cause until the patient changed her testimony at trial. This should have ended the analysis. The Court's more lengthy analysis of whether there was probable cause to support the claim of negligence in performing the surgery is therefore unnecessary and incorrect to the extent that it implies that if any count in a proceeding is unsupported by probable cause, an action for wrongful civil proceeding can be brought. A defendant in the underlying action who feels that a particular cause of action has no basis, has other methods available in that action by which baseless claims can be eliminated (e.g. motions under Rules 12(b)(6) or 56). So long as there is probable cause to pursue the remaining causes of action, a later lawsuit for wrongful civil proceeding is not available.